THE LAWRENCE UNIVERSITY VS. SMITH.

(1-3) *Evidence.* (4, 5) *When jury may be instructed to find for a party.*
(6) *Agency — Estoppel.* (7) *Statute of limitations.*

1. In an action to recover the proceeds of a note alleged to have been collected by defendant as plaintiff's agent, where there was evidence tending to show that a committee appointed by the board of trustees of the plaintiff corporation to settle with defendant reported against accepting such note as a donation from the person who owned the same, it was error to rule out a question in behalf of defendant as to what disposition the trustees made of such report.

2. It appearing that defendant had passed said note over to said committee, he should have been permitted to show what afterwards occurred between the committee and himself in relation thereto.

3. A witness for plaintiff having testified that in a conversation with him (subsequent to the report of said committee and the action of the board thereon), defendant offered to let plaintiff have the proceeds of said note, it was error to refuse defendant's testimony explanatory of such offer.

4. To justify a direction to the jury to find for a particular party on a question of fact, the evidence should be clear and uncontradicted, and all one way, or its weight and effect should be so obvious and decided in favor of the direction so given that a verdict to the contrary would at once be set aside.

5. The evidence in this case *held* not to warrant a direction to the jury to find a verdict for the plaintiff.

6. The fact that defendant, for any purpose, represented himself to third persons as agent for plaintiff in the collection of said note, would not *estop* him from denying such agency in this suit; and it was for the jury to determine, upon all the evidence, whether such representations were true.

7. The *statute of limitations* began to run against plaintiff's claim only after defendant had *collected* said note.

APPEAL from the Circuit Court for *Winnebago* County.

Action (commenced in 1871) for money had and received by defendant for the use of plaintiff. The complaint avers, in substance, that some time previous to 1860, defendant was appointed by plaintiff its agent to solicit donations for its use; that as such agent he received as a donation to plaintiff, in 1860, from one Newhall, of the state of Massachusetts, a note given by one Howard, of the state of Michigan, for $500, with interest; that defendant retained possession of this note until about January 1, 1866, when said Howard paid the note to him for plaintiff (amounting with interest to about $810), by executing and delivering to him a deed of certain lands in Michigan, and paying ten dollars in money; that at defendant's request and on his representation that it would be to plaintiff's interest to leave the name of the purchaser in blank with authority to plaintiff or defendant to insert therein the name of the person who might purchase the same of plaintiff, said deed was so made; that immediately after receiving such deed, defendant inserted the name of one Ward as grantee therein (having previously sold the land to said Ward), and delivered the deed to him; that said deed was a valid conveyance of plaintiff's said land to Ward; that defendant received from Ward for plaintiff, as purchase money of said land, at the time of the sale and conveyance thereof (January 1, 1866), $800; and that he has refused to pay over said sum of $810 to plaintiff, on demand. Judgment is therefore demanded for said sum of $810, with interest from January 1, 1866, etc.

The answer, after setting up the statute of limitations, alleged as a second defense the following facts: that in March, 1861, defendant ceased to be plaintiff's agent for any purpose; that about January 12, 1862, plaintiff and defendant had a full accounting and settlement of all matters pertaining to such agency, and there was then found due and allowed to defendant $154.35; that while he was still acting as such agent, Mr. Newhall, above mentioned, proposed to pay a subscription of $375

to plaintiff in the Howard note above described, on which there was then due $675 ; that the arrangement was that if the note should be collected $300 of the amount should be returned to Mr. Newhall, and the balance should be applied on his subscription; that it became impossible to collect any sum of money on said note from said Howard, and after defendant had delivered to plaintiff's agent for a settlement the books and papers relating to his agency, he went to the residence of Mr. Newhall in Massachusetts, and returned to said Newhall the said Howard note, on the 16th of July, 1861, "prior to the date at which he was obliged to return the same if not collected ; " that afterwards, and after defendant had ceased to be plaintiff's agent for any purpose, he entered into a new, private arrangement with Newhall, by which he agreed to take said note, and collect the same in money or property, " as defendant's own private matter," and to pay Newhall a fair proportion of the amount, if collected, after deducting the expenses of collection ; that afterwards Howard offered to convey the lands described in the complaint in satisfaction of the note ; that the expenses incurred by defendant in collecting said claim, and the value of his time and services, were " equal to the greatest portion of said claim ; " and that afterwards, in May, 1866, Mr. Newhall sold and assigned to defendant his interest in said lands for $150. Except as thus admitted the answer denies all the averments of the complaint.

The questions arising upon the rejection of evidence offered by the defendant will sufficiently appear from the opinion.

The court directed the jury to find a verdict for the plaintiff for $375, with interest, etc.; and after the jury had returned such a verdict, judgment was rendered in accordance therewith ; from which the defendant appealed.

*Hudd & Wigman*, for appellant, contended that defendant was entitled to the benefit of the evidence rejected by the court, and that the question of fact should have been left to the jury. 1 Chand., 231; 3 id., 240; 5 Wis., 429. They also argued

that if the plaintiff had any claim upon the defendant, it was founded upon an unauthorized retention by the latter of the Howard note, after his agency for the university terminated (viz., some time in 1861); and that the statute of limitations had run upon any such claim.

*Warner & Ryan*, for respondent, argued, 1. That the statute of limitations did not begin to run against this claim until the receipt of the money by defendant for the sale of the land deeded by Howard, because the plaintiff could not have commenced the action until that time. 2 Parsons on Con. (4th ed.), 370–72, sec. VI.; 15 Wend., 302–5; 4 Sandf., 590; *Kelsey v. Griswold*, 6 Barb., 436; *Sheldon v. Sheldon*, 3 Wis., 699; *Howell v. Howell*, 15 id., 55. 2. That if defendant ceased to be agent for the university in 1861, but retained the Howard note and collected the same, representing himself as agent for the plaintiff, he is *estopped* from denying such agency. Hermann on Estop., ch. 12, §§ 320–323; *Calanan v. McClure*, 47 Barb., 206; *Welland Canal v. Hathaway*, 8 Wend., 480; *Howell v. Howell*, 15 Wis., 55; Story on Agency, §§ 229, 239, 242–4, 333–4, 349.

DIXON, C. J. The judgment must be reversed for error in the rejection of testimony, and for improper direction by the court to the jury to find a verdict for the plaintiff.

The court erred in sustaining the objection to the question put to the witness Paine, as to what disposition the trustees made of the report of the committee appointed to settle the endowment fund account of the defendant. Mr. Paine and Mr. Jennie were the committee appointed by the board of trustees of the plaintiff to settle that account with the defendant, and they did settle it with him [in June, 1862], and reported their action to the board. Mr. Jennie testified: " We stated to the board why the [Howard] note was left in *Mr. Smith's* hands, on account of its worthlessness, and the embarrassment of Mr. Smith's relation to it; I expressed my con-

viction that it was worthless to the university; I think this is all we stated to the board in relation to it." Mr. Paine testified : " We reported to the board in session ; we reported that we considered the Howard note as worthless, and that it would embarrass the university to have anything to do with it; we declined to receive it from *Mr. Smith* for the university; we reported, also, that we had better not receive it for the university ; that there was no other man but *Mr. Smith* at any rate that could get anything out of it, and that it would take money and time, neither of which had the university to bestow on such cases ; that is what we reported as the committee to the trustees." The tendency of this testimony was, to show that the committee rejected the donation of Mr. Newhall of onehalf the proceeds of the Howard note, provided the same could be collected ; and that they so reported to the board of trustees in session. Under these circumstances, the question put to the witness Paine as to what disposition the trustees made of the report, was clearly pertinent and proper. In connection as asked it must be assumed that the object of the question was to show that the board of trustees accepted and ratified the report of the committee, and hence that the plaintiff became bound by their action in rejecting the donation. The exclusion of the answer was, or might have been, therefore, prejudicial to the defendant, and was erroneous.

It was error also to exclude the answer when the witness Jennie was requested to go on and state what was done further in reference to the Newhall note on the part of the committee. The witness had just stated that among other papers the defendant passed over to the committee the note he received from Mr. Newhall; and it was clearly competent and material, under the circumstances, that all that occurred between the committee and the defendant with respect to the note should have been disclosed before the court and jury.

Again, it was error, we think, not to permit the defendant to testify why it was that in the conversation with the witness

Himebaugh [in December, 1865] he offered to let the institution have the net proceeds of the note. The object of introducing the facts proved by the testimony of Mr. Himebaugh, and their tendency, were to show that the defendant recognized the proceeds of the note, or one-half of them, as belonging of right to the university; but this was a proper subject for explanation on the part of the defendant, and he should have been allowed to explain, and his statements should have gone to the jury for what in their estimation they were worth in determining the nature of the transaction in respect to the note.

And the court was wrong in directing a verdict for the plaintiff. The case should have been submitted to the consideration of the jury. The rule in cases of the kind is, that when there is any doubt as to the facts, they must be found by the jury, and it is improper for the court to direct a verdict. This point was examined in *Cutler v. Hurlbut*, 29 Wis., 152, and such is the rule there stated. To justify the direction on a question of fact, the evidence should be clear and uncontradicted, and all one way, or the weight and effect of it should be so obvious and decided in favor of the direction given by the court, that a verdict to the contrary would at once be set aside. The rule is the same as that which obtains where a motion for a nonsuit is made, and where it is held that the court must look at the facts in the most favorable light for the plaintiff in which the jury would be at liberty to find them, and then be able to say that there is no evidence which would justify a verdict in his favor. *Sutton v. The Town of Wauwatosa*, 29 Wis., 21.

The evidence given on the trial did not warrant the interference of the court in withdrawing the case from the consideration of the jury, as a slight examination of the bill of exceptions will show. The bill is certified to contain all the evidence, so that we have it all before us. Besides the testimony of the witnesses Jennie and Paine above referred to, there was

that of the defendant himself, who stated that he offered the note to the committee, and that they replied they did not want it, and added, if he, defendant, could make anything out of it, to do so. And a portion of the record book of the proceedings of the trustees was read in evidence, as follows: "The endowment committee made their report, which was accepted, and the committee discharged." It is true, the bill of exceptions fails to show whether this was or was not the report of the committee respecting the Howard note; but, as the evidence was admitted, it must be presumed to have had some reference to that report. If it did relate to that report, then there was evidence before the court and jury tending to show that the board of trustees had refused to accept the donation of Mr. Newhall; and if the board did refuse at that time, it was certainly an important fact to be considered and found by the jury in determining the liability of the defendant in this action.

We are aware of the strong tendency of the evidence on the part of the plaintiff to establish its claim against the defendant; but still it is not of a nature to be conclusive against him. There is nothing in it of a kind to estop the defendant from denying his liability, as counsel for the plaintiff seem to suppose. If the defendant found it for his advantage, or saw fit for any purpose, to state or represent that he was acting as agent for the plaintiff in the collection of the note, when in reality he was not, he must be content to let a jury put such interpretation upon his statements and representations as, under all the circumstances, they may see fit to do in this action. It will be the defendant's own fault if in this manner he has transformed himself into an agent when in fact he was not. But in any event the defendant will be entitled to have the entire evidence respecting the alleged rejection of the donation by the board of trustees before the court and jury; and as the evidence upon this question stood at the time the verdict was directed for the plaintiff, we are satisfied such direction was unauthorized.

The objection that the statute of limitations has run upon the

demand of the plaintiff, is untenable. Upon the supposition that the defendant was acting and received the money as agent and for the use of the plaintiff, the statute began to run only when the money was received, which was less than six years before this action was commenced.

The foregoing views lead necessarily to a new trial, and such must be the order of this court.

*By the Court.*— Judgment reversed, and a new trial awarded.

LYON, J., being a member of the board of trustees of the party plaintiff, did not sit in this case.