SABOTTA VS. THE ST. PAUL FIRE & MARINE INSURANCE COMPANY.

*February 14 — May 10, 1882.*

COURT AND JURY. *(1-2) When court may properly direct a verdict for the plaintiff.*

PRACTICE IN SUPREME COURT. *(3) Remitting to court below the record on appeal, for correction.*

1. The court should not direct a verdict for the plaintiff, unless the evidence for the defendant, considering it as undisputed, and giving to it the most favorable construction in defendant's favor that it will legitimately bear, including all reasonable inferences from it, is insufficient to justify a verdict in defendant's favor.

2. The written application for the fire-insurance policy here sued upon, contained covenants that the answers therein were true and were warranties on the part of the assured, and the policy purported to be issued partly in consideration of such warranties, and was conditioned to be void if the assured had made any false representations or concealments material to the risk, or if he should assign the policy. There was evidence tending to show that the assured, in his application, falsely represented the incumbrances at much less than their real amount, and that he had assigned the policy before the loss. *Held,* that it was error to direct a verdict in his favor.

3. While it may be competent for this court, in a proper case, to remit to the court below the record on appeal, for a correction of the bill of exceptions, even after the cause has been decided (*Allerding v. Cross,* 15 Wis., 530), yet it refuses to do so in this case, on the ground that the failure to have the desired correction made before the cause was argued and submitted upon the merits, is not a case of excusable neglect.

Sabotta vs. The St. Paul Fire & Marine Ins. Co.

APPEAL from the Circuit Court for *Trempealeau* County. Action on a fire-insurance policy. The case is thus stated by Mr. Justice CASSODAY:

The plaintiff's application for the policy upon which this suit is brought, contained the following questions and answers: " *Question* 14. What title has applicant to these premises? *Answer.* Fee-simple title. *Q.* 15. How many acres of land do you own? *A.* One hundred and twenty acres. *Q.* 17. Is your property incumbered? By and to what amount? *A.* Yes; $400." It also contained a covenant and agreement that all the foregoing written answers to the several questions therein were true and correct in every particular, and warranties on the part of the assured, and that the same might be referred to in the policy as a part thereof, and the basis upon which the policy might be issued. The policy was issued January 6, 1879, against loss by fire and lightning, and recites that it was issued in part consideration of the warranties contained in the application, and that if the assured made any false or erroneous representations or concealments material to the risk, or assigned the policy without the consent of the company indorsed thereon, then in every such case the policy should be void. The property was destroyed December 31, 1879. On the trial, at the close of the plaintiff's testimony, the defendant moved for a nonsuit on the ground that it appeared from the plaintiff's own showing that he had assigned the policy. The motion was denied. By stipulation, all rebutting testimony in regard to the plaintiff's acquiring title to the land in question was omitted from the bill of exceptions, and no point was to be raised upon this appeal in regard to the title of the premises in question.

At the close of all the testimony the defendant's counsel moved the court for a nonsuit, on the grounds: (1) That the testimony shows conclusively that the plaintiff is not the only party in interest. (2) That the undisputed testimony shows a breach of the warranty in relation to incumbrances. (3) That

under the testimony it should not be submitted to the jury to say whether there was a mistake in the application in relation to incumbrances. (4) That the policy is void by reason of the assignment, and the plaintiff cannot recover. Thereupon the court remarked: "In the situation of the evidence, I do not think the court should take the case from the jury. If counsel agree on the value, the verdict may be taken for the plaintiff, subject to the opinion of the court on the questions of law, or the case may go to the jury with instructions, at the defendant's option." The bill of exceptions states that, after excepting to this ruling, the defendant's counsel said: "We agree on the value of the property, counting the house at $550, and personal property at $300, making $850. We desire the court to instruct the jury that the plaintiff's right of recovery is only three-fourths under the contract; that is, three-fourths of the real estate." Thereupon the court said: "I think the statutes fix the measure of damages. I will instruct the jury to find a verdict for the plaintiff for the full amount as agreed upon, subject to the opinion of the court on the questions of law." The bill of exceptions states that the defendant excepted to that portion of the charge which directed the jury to find a verdict for the full value of the real estate as agreed upon.

There was a verdict in plaintiff's favor for $850; a new trial was refused; and defendant appealed from a judgment on the verdict.

The cause was submitted for the appellant on the brief of *J. W. Lusk.*

For the respondent there was a brief by *M. Mulligan*, his attorney, with *Olin & Grinde*, of counsel, and oral argument by *Mr. Olin*.

The following opinion was filed March 14, 1882:

CASSODAY, J. The verdict having been directed for the plaintiff, the judgment entered thereon can only be sustained

on the theory that the evidence in behalf of the defendant, had it remained undisputed, and giving to it the most favorable construction it will legitimately bear, and deeming everything as fully proved which such evidence tends to prove, including all reasonable inferences from it, is insufficient to justify a verdict in favor of the defendant. *Lawrence University v. Smith*, 32 Wis., 592, and other cases cited in *Spensley v. Lancashire Ins. Co., ante*, p. 433. Is there any evidence, when so construed, tending to prove, (1) that the plaintiff, at the time of applying for the insurance, misrepresented as to the amount of incumbrances on the premises; and (2) that the plaintiff assigned the policy?

It appears from the undisputed evidence that on the 21st of October, 1872, Smith, owning 126 acres of land, mortgaged the whole for $690 to Allen, who assigned the mortgage to George Moser, June 21, 1875. The plaintiff, having purchased of Smith 80 of said 126 acres, mortgaged the same to Moser, May 19, 1876, for $400; and the evidence tends very strongly, if not conclusively, to show that Moser, at the time of taking that mortgage, and in consideration therefor, agreed to release the 80 acres from the $690 mortgage which he then held. January 2, 1877, the plaintiff gave to Moser another mortgage on the 80 for $400 more. April 26, 1879, Moser began to foreclose the $690 mortgage by advertising the whole 126 acres for sale to satisfy the balance of $290 due thereon, after deducting the first $400 mortgage; and 26 acres were sold in satisfaction thereof, together with interest and costs, June 9, 1879; and thereupon the 80 acres were released from that mortgage. The plaintiff admits that he signed the written application for insurance, which stated that there was but $400 incumbrances on the premises; and he also admits that there were at the time two mortgages, of that amount each, on the premises, making $800. The plaintiff also admits that June 9, 1879, he signed the blank assignment on the back of the policy, and gave the same so signed to the attorney of the

owner of the two $400 mortgages, at his request, and who at the time held the mortgages; he also admits that he subscribed and swore to the affidavit of January 12, 1880, and that the statements therein contained were correct. These admissions, the contents of these several papers so signed by the plaintiff, the undisputed facts in the case, and the nature and character of the other evidence given upon the trial, leave no doubt in our minds but that, under the rule stated, there was evidence tending to prove that, at the time of applying for the insurance, the plaintiff misrepresented as to the amount of incumbrances upon the premises, and also evidence tending to prove that the plaintiff made an absolute assignment of the policy. Whether he did either of those things or not, was therefore, in our opinion, a question of fact for the jury; and hence it was error to direct a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

The respondent moved for a rehearing, and obtained an order on the appellant to show cause why the record should not be remitted to the circuit court for the purpose of having the bill of exceptions corrected. The following opinion was filed May 10, 1882:

Per Curiam. This is an order to show cause why the record should not be remitted to the court below for the purpose of having the bill of exceptions corrected in certain respects. The cause has been argued; submitted, and decided. The object of remitting the record is to have stricken from the bill an exception which appears to have been taken by the appellant to the ruling of the court directing a verdict for the plaintiff. This court held the exception taken to such direction good, and reversed the judgment on that ground. It may be competent for this court in a proper case to remit the

record for a correction of the bill of exceptions, even after the cause has been decided. This seems to have been done in *Allerding v. Cross*, 15 Wis., 530. But certainly a plain case of excusable neglect should be presented to justify such a practice. We are all clearly of the opinion that the record ought not to be remitted in this case. It is claimed that the bill of exceptions which was before the court does not contain certain amendments which were agreed upon by counsel as being correct. It seems to us, if this was so, that the respondent's attorneys were guilty of laches in failing to discover the mistake in the bill of exceptions before the cause was called for argument. They certainly had ample time and opportunity to examine the original bill on file and read the printed case before the cause was argued, and should have discovered the mistake in the bill, if one there were. Under the circumstances we do not think we should be warranted in remitting the record for any correction therein.

*By the Court.*— The order to show cause must be discharged.

The motion for a rehearing was then denied.