THOMPSON, Receiver, Respondent,. vs. BRENNAN, Appellant.

*October 20 — November 24, 1899.*

*Promissory notes: Failure of consideration: Bona fide purchaser: Court and jury: Motion for direction of verdict: Waiver of jury trial.*

1. In an action by an indorsee of a promissory note, the consideration for which had failed, the evidence (stated in the opinion) is *held* sufficient to make it a question for the jury whether the plaintiff's ownership was *bona fide*, and whether such ownership commenced before the maturity of the note.

2. A motion by each party to an action that a verdict be directed in his favor will not be construed as an admission or agreement that there is no issue of fact, or as a waiver of the right to have the facts passed upon by the jury and a submission thereof to the court.

3. Before directing a verdict the court must look at all the facts in the most favorable light for the other party in which the jury would be at liberty to find them, and then be able to say there is no evidence which would justify a verdict in his favor.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

Suit by plaintiff, as receiver of the Citizens' National Bank of Madison, South Dakota, upon a negotiable promissory note for $772, and seven per cent. interest, from the defendant to M. W. Daly, dated December 6, 1887, and due July 1, 1891, which, when offered in evidence, bore, first, the indorsement, "M. W. Daly," in the handwriting of Trow, the cashier of the bank, which had been canceled or scratched out; second, the indorsement, "Without recourse to M. W. Daly," in Daly's own handwriting. It was testified that the note came to the bank January 14, 1888, having been received by Trow, the cashier, while in California, in the course of an adjustment or division of proceeds of certain speculative investments in which Daly, who was a stockholder, Trow, who was cashier, Smith, who was presi-

dent, of the plaintiff bank, and others, were interested; it
apparently having been accepted by Trow, in the course of
that adjustment, for the bank. When first entered on the
books of the bank, credit therefor was given to Trow's gen-
eral account. At maturity the note was protested, and
thereafter suit was commenced thereon, by direction from
the bank, against the defendant, in the name of Daly as
plaintiff. In that suit *Brennan* interposed a defense on the
ground of fraud and failure of consideration, and a counter-
claim seeking to cancel the note and recover back other
consideration paid by him, for fraud as to the title of real
estate, conveyance of which was the consideration for this
note. After the interposition of this answer, when the case
was reached for trial in November, 1892, Daly refused to
proceed upon his cause of action on the ground that he did
not own the note and the suit was not properly in his name;
but under the order of the court the trial did proceed upon
the counterclaim, resulting, after an appeal to this court, in
a judgment dismissing the same. The suit upon the note
in the name of Daly as plaintiff appears never to have been
disposed of.

In the case at bar the defense interposed was failure of
consideration, and that plaintiff was not an innocent holder
for value before maturity of the note sued on. A plea in
abatement for that another suit was pending under the di-
rection of the present plaintiff was interposed, and after
trial thereon a verdict denying the same was directed by
the court, the assignment of error upon which, in appellant's
original brief, seems to be abandoned. Further facts ma-
terial to the consideration of the case are stated in the opin-
ion. At the close of the evidence the court directed a ver-
dict for the plaintiff, from the judgment on which this appeal
is taken.

For the appellant there was a brief by *Sanborn, Luse &*

*Ellis*, attorneys, and *E. F. McCausland*, of counsel, and oral argument by *L. K. Luse*.

For the respondent the cause was submitted on the brief of *Geo. C. Cooper*.

DODGE, J. 1. It appearing that the consideration of the note sued on had failed, it was necessary to a recovery that plaintiff should prove that the bank received it in due course of business, before maturity, for value, and without notice of the defenses. Rand. Comm. Paper, § 538.

*Prima facie* proof of such holding might be made by the indorsement written on the note, but the time of that act is in much dispute. The original indorsement of the payee's (Daly's) name was in the handwriting of Trow, the cashier, and before trial had been canceled. The following indorsement in the hand of Daly himself was, " without recourse." Trow's testimony threw much doubt on whether Daly was in California or in South Dakota in January, 1888, when it is claimed the note was first received into the bank; and at and until some time after the maturity of the note the plaintiff's conduct was consistent only with the understanding that Daly was liable to the bank, as he would be under the first indorsement, but would not be under the one without recourse. The note was protested when due,— a ceremony needless if indorsed without recourse. It was thereafter directed to be sued in Daly's name, and expenses thereof were charged to him. Notwithstanding the testimony of Trow that he thought the indorsement was written by Daly in the bank in January, 1888, rendered doubtful by uncertainty of recollection and some contradiction, such conduct on plaintiff's part was sufficient to raise a question for the jury as to whether the indorsement relied on (that in Daly's handwriting) was made before maturity, or at some time thereafter, when the difficulties in the way of recovery in Daly's name

became apparent. If, however, it were the fact that the note was duly purchased by the bank in January, 1888, as claimed, there was evidence tending to show that such ownership had afterwards terminated, and that only a new and later possession and ownership existed at the time of trial, which did not commence until after maturity. The entries on its books of account *prima facie* support that conclusion and no other. The bills-receivable register shows the note when originally entered to be "Paid." The journal shows first the purchase of the note, and payment therefor to Trow by a credit to his account January 14, 1888; then, on April 1, 1893, that Trow gave his own bill receivable, $988.82, to take up this note, with $180 interest, and $36.82 of other debts which Daly owed the bank; that on April 12, 1893, this bill receivable of Trow was paid by his own bill receivable for $659.21 and Daly's bill or note for $329.61, which last was paid in cash on May 2, 1893; and that on July 24, 1893, the note in suit was again received by the bank, and Trow's bill or note for $659.21 above mentioned satisfied, and he paid the difference, $112.79, by credit to his general account. There is much in the evidence to show that Trow and Daly were involved in mutual transactions with each other, and that many things done by Trow in his own name were in fact done for Daly or for their combined interests. This showing of plaintiff's books of account is met by some attempted explanation by Trow, which is evasive and confused at best, and certainly does not so wholly overcome the *prima facie* significance of these book entries as to exclude any possible inference that the note had been paid to the bank by either Trow or Daly, from whom it was originally received, or by both of them together, and that the plaintiff did not again acquire title till July, 1893, long after maturity. The book entries are very cogent evidence, and can be disputed and explained away only by clear and convincing testimony.

Thompson vs. Brennan.

The attitude of affairs thus indicated by the books is supported by other conduct and circumstances, such as the action brought on the note after maturity in the name of Daly at Trow's direction, the fact that Trow understood from Daly that the latter would take charge of such litigation, and the charging expenses thereof to him. Such facts are further supplemented by the consideration that all acts, either of Daly or the bank evincing a claim of continuous ownership in the latter occurred only after a defense had been interposed which might well embarrass Daly but could not affect an innocent holder.

From the foregoing it is apparent that the *bona fides* and the time of commencement of the bank's ownership of the note should have been submitted to the jury, and that direction of a verdict for plaintiff was error.

2. Respondent calls attention to the fact that each party moved the court to direct a verdict in his favor, and urges that we should adopt and enforce the rule long recognized by the New York courts, that such motions will be construed as an admission or agreement that there is no issue of fact, or as a waiver of the right to have the facts passed on by the jury, and a submission thereof to the court. This rule has been followed in North Dakota, but in no other state, so far as we discover. It has been recognized in the United States courts in cases tried in New York.

The question, though never expressly decided in Wisconsin, was present in *Sabotta v. St. Paul F. & M. Ins. Co.* 54 Wis. 687; *Calder v. Crowley*, 74 Wis. 157; *Plankinton v. Gorman*, 93 Wis. 560; and *Richter v. Leiby's Estate*, 101 Wis. 434,— was urged by counsel in all except the first, and in all the New York rule was impliedly repudiated by reversing the judgments and ordering new trials, while in *Calder v. Crowley* it was said (LYON, J.) the court would be slow to hold that the right to have questions passed on by the jury would be waived by a motion to direct a verdict.

It is certainly a strained construction to hold that an assertion that there is no evidence against one is an admission that there is none in his favor; yet that is the result of the New York doctrine that a motion to direct a verdict is an admission that there is no question of fact for the jury. Again, in our practice the motion is perhaps most often made to raise some special question of law depending on undisputed facts quite independent of the main issue,— as, for example, the statute of limitations, or the giving of notice of personal injury. It is an extreme doctrine that a party who invokes the opinion of the court on such question of law purposes to waive his right to have the contested facts upon the general merits of his case passed on by a jury. While the constitutional right to a jury trial may be waived by acts, such waiver should not be held to arise from ambiguous acts, from which actual existence of such intention cannot be inferred with reasonable certainty.

These considerations are especially cogent in Wisconsin, where through half a century of practice the motion to direct a verdict has never been held to have any such force as is given to it in New York. With us, certainly, the counsel who makes such a motion cannot rationally be presumed to have intended such result. Through all those years judgments upon verdicts directed by the court have come before this court, many of them where both parties had moved for a directed verdict, with no intimation by this court that such a motion, whether made by one or both parties, surrendered to the court the jury function, or admitted nonexistence of any issue of fact. In all such cases the question has always been declared to be, not whether there was any evidence to support the verdict directed, but whether there was any evidence to support a contrary verdict. *Cutler v. Hurlbut*, 29 Wis. 152, 165; *Lawrence University v. Smith*, 32 Wis. 592; *Spensley v. Lancashire Ins. Co.* 54 Wis. 433; *Sabotta v. St. Paul F. & M. Ins. Co.* 54 Wis. 687, 689; *Lewis*

*v. Prien*, 98 Wis. 87; *Potter v. Necedah Lumber Co.* 105 Wis. 25.

In the light of such long-continued practice, it would be perversive of the understanding upon which counsel ordinarily make such motions, and of the understanding upon which trial courts consider and decide them, to now apply the New York doctrine *ex post facto*. We adhere to the rule, so often stated, that before directing a verdict "the court must look at all the facts in the most favorable light for the other party in which the jury would be at liberty to find them, and then be able to say there is no evidence which would justify a verdict in his favor." DIXON, C. J., in *Lawrence University v. Smith, supra.* Omission of this duty is error, which may be reviewed on appeal.

· *By the Court.*— Judgment reversed, and cause remanded for a new trial.