MINER, Appellant, vs. BRADER, Respondent.

*March 1 — March 16, 1886.*

*Village plat: Location of lots, etc.: Evidence.*

In determining the true location of streets, blocks, and lots shown upon the plat of a city or village, fixed monuments referred to in the plat are preferred to and control courses and distances, especially if there has been long-continued occupation in accordance with such monuments.

APPEAL from the Circuit Court for *Dane* County. The case is stated in the opinion.

*H. W. Chynoweth*, for the appellant, contended, *inter alia*, that it is admitted that Prof. Conover's survey is strictly accurate according to Britts' plat. Both the surveyors agree as to the location of the quarter-post from which the survey of the plat was to be started; and this quarter post is conclusive upon the subject of survey. *Vroman v. Dewey*, 23 Wis. 530; *Marsh v. Mitchell*, 25 id. 706. Douglas's survey was merely made as the village was actually occupied, and did not conform to any plat. It would conform to Britts' plat if *forty-one* rods and twenty-three links were substituted on the plat for *forty-four* rods and twenty-three links, as the distance from the quarter-post in commencing the survey. And so if Prof. Conover had started *forty-one* rods and twenty-three links west of the quarter-post, instead of the distance specified in the plat, his survey would have coincided exactly with that of Douglas. But there is no authority for making such a change in the specified distance. This is not a case in which distances can be controlled by monuments. The only monument designated upon the plat, besides the quarter-post, is the stone planted in the town line. There is no evidence that the stone is located *forty-one* rods and twenty-three links west of the quarter-post, and no evidence that it is not just where the plat says it is.

It *is* there, until proof to the contrary shows its absence, or shows it is lost. All evidence as to the actual location of the premises was therefore irrelevant and immaterial, and could not control the written instrument itself. *Steyer v. Curran*, 48 Iowa, 580; *Messer v. Reginnitter*, 32 id. 312. In *Racine v. J. I. Case Plow Co.* 56 Wis. 539, there was a patent ambiguity in the plat, which might be explained by parol testimony; but here there is no ambiguity in the plat and no such evidence is admissible to vary its terms. *Buckner's Lessee v. Lawrence*, 1 Doug. (Mich.), 19; *Moore v. People*, 2 id. 420; *Pollard v. Shively*, 5 Col. 309. Even if the stone monument were lost, parol evidence could not be resorted to to control courses and distances. It would then be like a case in which no monuments were named in the deed or called for in it. *Seaman v. Hogeboom*, 21 Barb. 403; *Finley v. Williams*, 9 Cranch, 164; *McCoy's Lessee v. Galloway*, 3 Ohio, 282. See, also, *Diedrich v. N. W. U. R. Co.* 42 Wis. 260. Nothing in the case connects the stake spoken of in the testimony with either the plat or its description, and therefore it can control neither. The map was evidently not intended to represent precisely and accurately the situation of the saw-mill and mill-pond; and there is no pretense that the grist-mill or the two bridges were in existence when the plat was made.

For the respondent there was a brief by *Tenney & Bashford*, and oral argument by *Mr. Bashford*. They argued, among other things, that if original landmarks are no longer discoverable, the question is as to where they were located, and the best possible evidence of that fact is usually to be found in the practical location of the lines, made at the time when the original landmarks were presumably in existence and probably well known. *Diehl v. Zanger*, 39 Mich. 601. So, where streets have, by the parties interested or by the public authorities, been opened, used, and acquiesced in, they thereby become permanent boundaries and form new

starting points in subsequent surveys, and should be regarded as fixed monuments in locating lots or blocks upon a city or village plat. *Van Den Brooks v. Correon*, 48 Mich. 287; *Twogood v. Hoyt*, 42 id. 612; *Pratt v. Lewis*, 39 id. 7; *Dupont v. Starring*, 42 id. 492. See, also, *Racine v. J. I. Case Plow Co.* 56 Wis. 542; *Marsh v. Mitchell*, 25 id. 706; *Nys v. Biemert*, 44 id. 104; *Fleischfresser v. Schmidt*, 41 id. 223; *Vroman v. Dewey*, 23 id. 530; *Lampe v. Kennedy*, 49 id. 601; *Gardiner v. Tisdale*, 2 id. 153; *Evansville v: Page*, 23 Ind. 525; *McClintock v. Rogers*, 11 Ill. 279; *Bauer v. Gottmanhausen*, 65 id. 500; *O'Farrell v. Harney*, 51 Cal. 125; *Burnett v. Burriss*, 39 Tex. 501; *Holst v. Streitz*, 16 Neb. 249; *Devine v. Wyman*, 131 Mass. 73; *Stevenson v. Erskine*, 99 id. 367; *Boardman v. Reed's Lessee*, 6 Peters, 328; *Barclay v. Howell's Lessee*, id. 498; 1 Greenl. on Evi. sec. 139.

LYON, J. This is an action of ejectment to recover several small parcels of land situated within the recorded plat of the village of Mount Vernon, in Dane county. A trial without a jury resulted in a judgment for the defendant, from which the plaintiff appeals.

The village of Mount Vernon was platted by one Britts, in 1851, and the plat was recorded in 1852. It consists of nine blocks, of uniform size, one of which is reserved as public ground, another for mill purposes, and one half of two others for watercourses from such mill block. The blocks are divided into lots of uniform size. The streets·are of uniform width, and intersect each other at right angles. Four of them extend northwest and southeast, and four others extend northeast and southwest. An east and west town and section line crosses the plat about the width of a block north of the southerly .corner thereof. The survey of the plat is certified thereon to commence " at a stone planted in the town line, . . . forty-four rods and twenty-three links west of the south quarter stake of section 34;

. . . thence north, fifty deg. east, eleven rods and eight links, to the public ground." The survey runs a line around this public ground, and shows that the course of eleven chains and eight links reaches the south corner thereof. Main street is on the northwest side of the plat, and there is marked upon the plat, within the limits of that street, opposite the block reserved for mill purposes (which is the most westerly block marked on the plat), two bridges over watercourses marked as leading from a mill-pond on the opposite side, and abutting such street across the mill block. On that block, abutting Main street, a saw-mill is represented. Also a grist-mill, which does not seem to have been erected when the plat was made. The watercourse below the mills is delineated on the plat as running through the northeast halves of the two blocks, one half of which was reserved for that purpose. These are all the monuments, natural or artificial, referred to on the face of the plat.

However, as early as 1852, a stake was found at a point which it is claimed denoted the east corner of Main and Washington streets, and hence the southeast line of Main street. The stake stood there several years; adjacent lots were bought and sold with reference to it; its location corresponded with the location of Main street on the plat with reference to the bridges and saw-mills; and the public authorities, at an early day, commenced the survey of a highway thereat as marking the true intersection of those two streets. Further, several buildings were erected on Main street in 1853 and later, in the vicinity of such stake, and these were located on the theory that the stake stood at the point above mentioned. It does not appear by whom or when the stake was set.

Two surveys of the village of Mount Vernon were put in evidence. These were made in 1883 or later; one by Prof. Conover, at the instance of the plaintiff, and the other by Mr. Douglas, the county surveyor, at the instance of the

defendant.　Prof. Conover started his survey at the south quarter post of section 34, and ran thence west, on the town or section line, forty-four rods and twenty-three links; and thence north, fifty deg. west, eleven chains and eight links. He established the southerly corner of the public ground at the termination of the last course, and that was the initial point from which he determined the location of the plat. That survey shows that the parcels of land in controversy belong to the plaintiff.　Mr. Douglas commenced his survey by locating Main street, which was his initial point.　It is a fair inference from his testimony (although he was not very fully interrogated on the subject) that he so located it with reference to the location of the bridges, dam, and sawmill marked on the plat, which he found to correspond with actual occupation and use of the street, and with the plat of an addition to Mount Vernon made by one Byam, which will hereafter be mentioned.　The result of Douglas's survey is to shorten by three rods the forty-four rods and twenty-three links course on Britt's plat, running west from the south quarter post of section 34.　If that survey prevails, the plaintiff is not the owner of the parcels of land he claims in this action.

The controlling question is, therefore, Which of these surveys gives the correct location of the plat of Mount Vernon? That of Prof. Conover is governed entirely by courses and distances.　True, it is certified on the plat that the survey of the public ground commences at a stone planted in the town line at the designated distance west of the quarter post; but Prof. Conover does not say that he found any stone at that point.　The stone is not described, its specific location is not designated on the plat, and no witness testifies that he ever saw or heard of it.　We cannot presume from anything in this record that the stone was there when Prof. Conover made his survey, or, indeed, that it was ever there.　It is quite as reasonable to suppose that the certificate on the plat referred to a stone to be

placed there in the future as that it referred to one already there. On the other hand, the location of the saw-mill on the plat abutting Main street on one side, and of the mill-pond on the other side, and of the bridges in that street across the watercourses, are very satisfactory monuments by which to locate Main street, to say nothing of the stake at the corner of Main and Washington streets, which seems to correspond with such monuments. In view of the elementary rule that fixed monuments in surveys are always preferred to and control courses and distances, the existence of these monuments strongly sustains the survey of Mr. Douglas.

But these are not the only facts in favor of that survey. There has been long-continued occupation, not only of Main street, but of other parts of the plat, which harmonize with Douglas's survey and location of the plat. Two hotels on the respective corners of Main and Washington streets were erected in 1853, or soon thereafter; also a dwelling on the opposite side of Main street. They still remain there, or other buildings stand on the sites they occupied. The same is true of buildings elsewhere on the plat. Prof. Conover's survey locates many of these buildings in the streets, and others of them a distance therefrom, when the owners supposed they abutted the streets. It may be observed, in this connection, that Prof. Conover's survey separates Main street and the saw-mill, leaving a strip two or three rods wide between them, and probably excludes the bridges, or at least some portions of them, from the limits of that street. On the authority of *Racine v. J. I. Case Plow Co.* 56 Wis. 539, it must be held that the foregoing considerations are conclusive in favor of the accuracy of the Douglas survey. The law on this subject is so fully and clearly laid down in that case by Mr. Justice ORTON that any further statement or discussion of it here is entirely uncalled for. This case is ruled by the judgment there given.

Before closing this opinion, it may be well to refer briefly

to another fact which, under the decision of this court in the late case of *State v. Schwin, ante,* p. 207, strengthens the conclusion already announced. In 1852, Britts, who platted Mount Vernon, conveyed a portion of the land so platted to one Byam. It would seem that Byam owned land adjoining the Mount Vernon plat. He recorded a plat of an addition to Mount Vernon in 1852, and extended certain of the streets in Britt's plat through his addition. Mr. Douglas's survey makes those streets correspond with the extension thereof on Byam's plat, while Prof. Conover's survey breaks the continuity of such streets on the two plats.

*By the Court.*— The judgment of the circuit court is affirmed.