DIRIMPLE, Appellant, vs. STATE BANK OF PHILLIPS, Respondent.

*November 27 — December 17, 1895.*

*Assignment of moneys in bank or to be received on contract.*

1. An agreement by which one interested in moneys in the hands of a bank releases any and all claim he may have thereon and instructs the bank to pay the same over to a third person, operates, after notice to the bank, as an assignment of such moneys.

2. Subcontractors having assigned their contract and given an order on the principal contractor to pay to the assignee all moneys due or to become due thereon, an acceptance by which the principal contractor agreed "to pay all moneys on this order *as soon as received by*" him on the principal contract did not operate as an assignment of moneys collected by a bank on the principal contract for the benefit of the principal contractor, even though the bank had notice of the order and acceptance.

APPEAL from a judgment of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action by the plaintiff to recover from the defendant the sum of $2,873.92, alleged to have been received by it from John Robson to and for the plaintiff's use, and which it refused to pay over. The defendant denied having received any moneys from Robson or any one else to the use of, or to be paid to, the plaintiff. At the close of the evidence the court directed a verdict for the defendant, and the plaintiff moved for a new trial, which was denied, and judgment was entered accordingly, from which the plaintiff appealed.

For the appellant there was a brief by *Tomkins & Merrill,* and oral argument by *W. M. Tomkins.*

For the respondent there was a brief by *John D. Rowland,* attorney, and *A. W. Sanborn,* of counsel, and oral argument by *Mr. Sanborn.*

PINNEY, J.  The evidence is that one Sweeney entered into a contract, September 6, 1890, with one Robson, whereby the former was to cut, haul, and bank the timber on certain lands, in consideration of certain compensation to be paid by said Robson.  Sweeney, October 10, 1890, sublet to Couillard & Keene the work of cutting, hauling, and banking the timber on a certain specified portion of said lands, for $3.50 per thousand.  On the 30th of April, 1891, Sweeney assigned and transferred to the defendant his contract, and all rights, benefits, and credits accrued or to accrue thereunder, with "power to negotiate and settle with said Robson, and to discharge him as fully and completely" as he might have done but for such assignment.  There was evidence that the assignment was made as security for Sweeney's notes to the defendant for $2,000.  On the 23d of April, 1891, Couillard & Keene assigned to the plaintiff all their interest in their contract with Sweeney, and constituted the plaintiff their attorney in their name, but to his use, to take legal measures for the recovery and enjoyment of the matters assigned.  Couillard & Keene had previously, by an order dated April 11, 1891, to Sweeney, directed him to pay to the plaintiff "all moneys due or to become due for all logs banked on our [their] contract" with him; and Sweeney had signed an acceptance thereunder, as follows: "I hereby agree to pay all moneys on this order *as soon as received by me* from John Robson on the contract.  JAMES SWEENEY."  The plaintiff testified that this acceptance was signed in September, 1891; that he knew that the money from this job was to come through the defendant from Robson, and wanted to stop it in the bank, so as to get his pay; that he had some conversation with Rossman, defendant's cashier, about it at the time, early in the spring of 1892, and prior to June 20th, and had already sent the contract, with the assignment, to the defendant; and that they had been turned over to the defendant during the winter of 1891–92;

and that he told the cashier at the time that he had an order, and had it accepted by Sweeney, and showed it to him, and asked him if it would make the thing any better if he would assign it to him, and he told him it would. It appeared that the order had been assigned by the plaintiff to the defendant, and that it kept it six or seven months, and returned it to him. The cashier claimed that he did not know where the money was to be applied, who was to have it, or how much each one was to have; that, as soon as they got a settlement between themselves, he was ready to pay it wherever it belonged; that the Couillard & Keene contract was assigned to secure the supply account and advances he had made to them.

There was evidence that the defendant, in June, 1892, received on the contract of Sweeney with Robson, $2,002.28; and the plaintiff testified, in substance, that the defendant paid him some time in July, 1892, $1,263.34, and that the balance still due on the Couillard & Keene contract was $1,610.58. By an agreement in writing of October 10, 1892, between the plaintiff and Sweeney, the true balance then due to the plaintiff on the Couillard & Keene contract was agreed to be $2,873.92; and, in consideration of the plaintiff's discontinuing an action he had brought against Sweeney, the latter agreed to release any and all claims he might have on the moneys due on said contract, and instructed the defendant to pay the same over to the plaintiff. The defendant, October 27, 1892, paid the plaintiff, on the order of Sweeney of the 24th of the same month, $1,000, which, with the further payment of $263.34, reduced the plaintiff's claim to $1,610.58.

On behalf of the defendant, the cashier gave evidence tending to show that the assignment by Sweeney of his logging contract with Robson was given as collateral security for the payment of $2,000, loaned him at the time by the bank, and that the two notes given for the loan were fully

paid by November 6, 1891; that it was understood that the assignment was to secure or protect any loans the bank made to Sweeney; that the notes were to be and were charged at maturity to his account as credits, on the payments to the defendant of moneys received on the Robson contract; that the same course was pursued with subsequent notes of Sweeney; that Sweeney directed the bank not to pay any money to the plaintiff without his check or order, and Sweeney also testified to such direction up to the time the agreement of settlement, dated October 10, 1892, was made. The testimony of the cashier tended to show that the defendant had no notice of this agreement until November 3, 1892, but the plaintiff gave evidence that it was presented to the defendant two or three days after its date, October 10, 1892, and payment of the balance was then demanded. The evidence further tended to show that after the acceptance by Sweeney of the order of Couillard & Keene in favor of the plaintiff on the defendant, and after it had notice of such assignment, order, and acceptance, and before the adjustment of Sweeney and plaintiff, and direction of October 10, 1892, to the defendant, to pay to the plaintiff the moneys in its hands, of which the defendant had notice about October 13, 1892, the said Sweeney had given to the defendant two promissory notes, both dated April 20, 1892,— one for $815, payable sixty days after date; and the other for $909.59, payable six months after date. In these notes Sweeney pledged the log contracts between him and Robson and with Coleman, which had been assigned to the defendant, for the payment of said notes. The defendant claimed the right to, and did, October 25, 1892, charge the amounts due on these notes against the moneys which had come into its hands on these contracts, namely, $1,782.61, with other small items; so that November 15, 1892, there was to Sweeney's credit with the defendant $437.59. This the cashier states in his evidence at about $400, and

that $400 of that balance came from the Coleman contract and had nothing to do with the Robson contract, but the statement of account leaves this open to question, and shows the balance as above stated, $437.59. He, however, says that he offered to pay plaintiff that balance, but that he refused to take it, and he also testified that there was a balance in Sweeney's favor November 1, 1892, of $25.35. This was before the payment of about $400 on the Coleman contract had come in.

1. Conceding that the defendant had a right, as against the plaintiff, to charge up and retain the amounts due on the two notes October 25, 1892, $1,782.61, against the moneys it had received on the Robson contract, the evidence tends to show that there was a balance in the defendant's hands of such moneys, to which the plaintiff was entitled, as assignee of the Couillard & Keene contract and of the moneys due from Sweeney under it, under the adjustment between him and the plaintiff and the order on defendant of October 10, 1892, whereby Sweeney agreed to release any and all claims he might have on that fund, and ordered the defendant bank to pay over the entire fund to the plaintiff. Under the circumstances, and under all authorities, this operated, after notice to the bank, as an assignment of such fund, whatever might be its amount, to the plaintiff, even though he had obtained no right to it under the order of April 11, 1891, and acceptance thereof by Sweeney, and subsequent notice of same to the bank. The evidence as to whether there was any fund in the hands of the defendant upon which the assignment by Sweeney could operate, and the amount thereof, is quite conflicting and uncertain, so much so that the court ought not to have ordered a verdict for the defendant. There appears to be evidence from which the jury might, in one view of the case, have found for the plaintiff, in some amount at least. For this reason there must be a new trial.

2. The assignment by Couillard & Keene of their contract with Sweeney to the plaintiff and their order on Sweeney of April 11, 1891, to pay to him "all moneys due or to become due for all logs banked under it," together with Sweeney's acceptance, by which he agreed "to pay all moneys on this order as soon as received by me [him] from John Robson on the contract,"— that is to say, the contract of Sweeney with Robson,— operated, no doubt, to transfer all claim of Couillard & Keene, under the contract, against Sweeney, to the plaintiff, but not to transfer to him, even with notice to the bank, any part of the fund received or to be received by the defendant bank of Robson for Sweeney or to his use. Under the acceptance, Sweeney retained full control over that fund. His liability on the acceptance was personal, and the acceptance did not transfer the fund, for he retained the right to collect and receive it from Robson through the bank. Sweeney forbade the bank to make any payment of the fund to the plaintiff, and the bank, under these circumstances, could not safely pay to the plaintiff, and his receipt would not have been a valid acquittance and discharge to the bank. "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment. . . . The assignor must not retain any control over the fund,— any authority to collect, or any power of revocation. If he does, it is fatal to the claim of the assignee. . . . A bill of exchange or check is not an assignment *pro tanto* of the funds of the drawer in the hands of the drawee. *Cowperthwaite v. Sheffield*, 3 N. Y. 243. But an order to pay out of a *specified* fund has always been held to be a valid assignment in equity, and to fulfill all the requirements of the law." And the fund holder is bound from the time of notice. *Christmas v. Russell*, 14 Wall. 84. This order and acceptance did not operate as an assignment of the fund belonging to Sweeney under the Robson contract in the hands of the defendant. *Trist v. Child*, 21 Wall. 441,

Vilas vs. McDonough Mfg. Co.

447; *Rogers v. Hosack's Ex'rs*, 18 Wend. 319; *Hall v. Jackson*, 20 Pick. 194; *Morton v. Naylor*, 1 Hill, 585; *State ex rel. State Bank v. Hastings*, 15 Wis. 75; *Gundry v. Vivian*, 17 Wis. 436.

For the reason already stated, the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.