CITY OF MADISON, Appellant, vs. MAYERS and others, Respondents.

*September 13 — November 16, 1897.*

*Dedication of streets: Abandonment: Boundaries, how ascertained: Rights of city in adjoining lake: Riparian rights.*

1. The recording of a village or city plat is a dedication to the public of the streets marked thereon, including their entire width as there indicated.

2. The mere nonworking or nonuser of a portion of a street does not operate as a surrender or abandonment of the same for the purposes of a public street.

3. The widening of a street at one point and narrowing it at another point on the same side of the street does not change the line on the other side of such street.

4. In the absence of any original monuments which can be ascertained, by which to determine the true location of streets, blocks, and lots in a city according to the plat and survey thereof, evidence is admissible of the location and occupancy of lots and blocks by residents, and the lines and corners of lots and blocks thereby established, as indicated by old fences, old buildings, and the streets as laid out and used for many years, and stakes and monuments established by former surveyors.

5. A city has such an interest in a street that it may maintain an action to prevent owners of abutting lots from so removing stone, earth, or other materials from within its limits as to impair an embankment, or make it more expensive or difficult to fit the whole width of the street for travel.

6. That a plat shows a strip of land between a street line and a lake shore is not conclusive that such strip exists as represented, but the dimensions of the lots must yield to actual conditions. One who owns a lot extending from a street to a lake shore has all the rights of a riparian owner.

7. Though a city is given jurisdiction over an adjoining lake for the benefit of trade, commerce, and health, and to provide for the abatement and removal of nuisances, and generally to take such other measures for public health as it shall deem proper, it does not thereby acquire any such interest or right in the lake or its waters outside of the limits of a street as to entitle it to maintain an action to restrain riparian owners from filling the lake outside of such street. The right of action is in the state.

APPEAL from a judgment of the circuit court for Dane county: GEO. CLEMENTSON, Judge. *Affirmed in part; reversed in part.*

This action is to restrain the defendants from removing any earth, stone, or other materials from the limits of Spaight street, between Patterson and Livingston streets, and to restore said street to its prior condition, and to restrain the defendants from filling in the lake opposite to or in front of said portion of said street, and to abate the nuisance created by them.

The complaint is to the effect that the plaintiff is a municipality, and has control of the streets and sidewalks therein; that Spaight street, between Patterson and Liv-

ingston streets (formerly known as Rutledge street), lying south of block 149, is a regularly laid out and platted, traveled street, being laid out, platted, and recorded as sixty-six feet wide; that the south line of said street opposite said block, and particularly that part of said line opposite lots 7, 8, 9, and 10 in said block, as originally platted and recorded, and ever since, has extended out into the waters of the lake a distance of ten or more feet; that that portion of said street not covered by the waters of the lake is fifteen or twenty feet above the surface of the waters; that the traveled portion of the street is separated from the lake by an embankment wholly within the limits of the street, and that the plaintiff has for several years last past maintained a substantial sidewalk along the inner edge of said embankment, and within the limits of the street; that said street and walk are, and for many years past have been, continuously used and traveled at all times of the day and at all seasons of the year; that the defendants have combined together, and did remove and are now removing large quantities of earth, stone, and other materials from the limits of that portion of said street, and particularly from the foot and face of the embankment, and have deposited and are now depositing earth, stone, and other materials in the waters of the lake beyond the limits of the highway, and that the earth, stone, and other materials are necessary for the preservation of the embankment and the street, and to maintain the proper grade thereof; that such conduct on the part of the defendants was to the irreparable injury of the plaintiff.

For a second cause of action the complaint alleges, in addition to the allegations contained in the first cause of action, in effect, that from that portion of the street the people have an unobstructed view and access to the waters of the lake; that the lake is a meandered body of water, and is navigable in fact to the south line of the street; that the defendants have taken the earth, stone, and other materials referred to,

City of Madison vs. Mayers and others.

and other earth, stone, rubbish, and other materials, and deposited them in the navigable waters of the lake, within the limits of the section of the street mentioned, and intend to erect buildings thereon, and forever close all access and travel to and from the lake.

The several defendants each separately answered by way of admission and denials, and allegations to the effect that the street mentioned was established and dedicated under and by virtue of a plat of the city duly made and executed according to law and recorded by James D. Doty, then owner of all the property and real estate upon which is now the city of Madison, May 7, 1837; that November 27, 1868, the common council of the city altered and changed the said street, and widened the same, by extending the northerly boundary thereof several feet into block 149, along the eastern portion thereof, as therein alleged; that December 4, 1868, the common council vacated a portion of the street opposite lot 1 in block 149; that lots 6 and 7 in block 150 were platted by the Doty plat, and as a part thereof; that the southerly boundary of the street extends no further south or nearer to the waters of the lake than a certain iron railing, which now extends along said street south of the sidewalk, on the south side thereof, and that the northerly boundary of said lots 6 and 7 extends to the said iron railing; that the jurisdiction of the city over the lake is for limited and special purposes only, and not for the purposes set forth in the complaint; that the placing of stone and earth in the shallow waters of the lake, as alleged, prevents the nuisance and accumulation of débris and dead fish on the defendant's land and the vicinity thereof, and enables him to more readily reach the deeper waters of the lake by boat, and prevents the action of the waters and ice upon his land, to his damage.

At the close of the trial the court found, as matters of fact, that Spaight (formerly Rutledge) street is one of the

public streets of the city, and *extends between blocks 149 and 150;* that the southerly line of said street is, and ever has been, the line marking *the crest of the bank along said block 150,* upon which was situated a certain iron fence or railing at the time of the commencement of this action, and being at all points along said block many feet distant from the waters of the lake; that said street *between said blocks is a public street* only by virtue of the fact that it has been used and worked and traveled for twenty years; that it is materially less than sixty-six feet wide (being of such width only as it has been worked and used); that the street so used and traveled *between said blocks* was never dedicated to the public by any of the plats of the city for the purpose of a public street; that it was not laid out, located, established, traveled, or used *at the point or points fixed by the various plats* of the city creating and fixing the streets, lots, and blocks of the city, and has never been used, worked, or traveled south of said iron fence or railing as it existed at the commencement of this action; *that the location of Spaight street, according to the various plats of the city, is a number of feet north of the present north line of said street, and as it now exists;* that none of the defendants removed any earth, bowlders, stones, or other materials *from within the limits of Spaight street,* or in any way injured or damaged the support of said street; that none of the defendants committed any nuisance of any kind or description at the point mentioned in the complaint; that, some years prior to the commencement of this action, certain persons, then owning lots in block 150, placed in the waters of the lake certain rocks and bowlders, in front of and distant from the shore line; that the action of the waters and ice in succeeding years carried such rocks and bowlders in and close to, and in some instances upon, the shore of block 150; that the only acts of any of the defendants were to remove said rocks and bowlders further out into the lake, and so place them in a

uniform line as to afford protection to the shore, and to prevent the accumulation of material at that point calculated to create a nuisance; that such acts created no nuisance, and had no tendency so to do, but rather to prevent one, and in no way interfered with or weakened the support of said street, but rather tended to strengthen and protect the same; that *Heath* is *the owner in fee of lot 3, block 150, according to the several plats of the city;* that the *north part* of lot 3, *lying immediately south of the street, throughout its whole width,* has, ever since said lot was platted, remained high and dry land, and is now high and dry land; *that assuming* Spaight street to be *sixty-six feet wide, and located where the city claims it to be,* yet *Heath* would still own dry land between the street and the lake along the whole width of his lot 3; that *Powers* is the owner and is possessed of lots 4 and 5, *block 150, which extend from the iron railing or fence* to the water's edge of the lake; that *Mayers* is the owner of lots 6 and 7 of block 150, *which extend from the iron railing or fence* to the water's edge of the lake; that continuously since said lots in block 150 were laid out and platted there has existed dry land on said lots at a point sixty-six feet south of the north line of Spaight street; *that Kerns* is and was the owner of lot 9 in block 150, and he and his ancestors in title have continuously owned the same since the platting thereof, and the same *extends from the iron fence or railing* southerly to the lake; that there is and ever has been a portion of said lot, between the waters of said lake and a point sixty-six feet south of the north line of Spaight street as actually established, dry land; that the city has no title to any portion of the bed of the lake, and has no jurisdiction over its waters, except for the limited and specific purposes mentioned in the charter.

As conclusions of law the court finds, in effect, that the defendants *Heath, Power, Mayers,* and *Kerns* are and were respectively the owners of the several lots as stated; that

each and all of said lots *extended from the iron railing or fence* to the lake; that neither the city nor any of the inhabitants thereof have any right of access to the waters of the lake over and across any of the said lots, but that the right to the same, as well as all other riparian rights incident to the ownership of land bordering upon the lake at that place, belongs to the respective defendants; that the city has no title to the bed of the lake, and is only given jurisdiction over its waters for the limited and specific purposes mentioned in its charter, which gave it no authority to enjoin or prevent any of the acts herein found to have been done by any of the defendants; that the injunction herein was improperly issued; that the defendants are entitled to judgment dismissing the complaint herein, vacating the preliminary injunction, and for their damages, including reasonable attorney's fees, and costs and disbursements in this action.    And it was thereby referred to a referee to assess the damages of each of the defendants, and report the same to the court, and judgment was entered thereon accordingly.

Upon such findings judgment was entered ordering and adjudging, in effect, that the injunction be, and the same was thereby, dissolved, and the complaint dismissed, with costs, taxed at $162.52 for *Kerns* and *Blackner*, and $42.27 for *Heath*, and ordering and adjudging that the defendants do have and recover against the plaintiff, as and for damages sustained by them by reason of the injunction, the sum of —— dollars and —— cents, as assessed by the referee therein appointed.    From that judgment the plaintiff brings this appeal.

For the appellant, *John A. Aylward*, city attorney, and *R. M. Bashford*, of counsel, argued, *inter alia*, that if the street extends to the water's edge, the city as a riparian proprietor can maintain an action to remove obstructions erected by the defendants between the limits of the street

and the navigable waters of the lake, or to prevent obstructions being placed in the lake, and that the street would continue to the new water front created by the defendants' filling. *Hoboken Land & Imp. Co. v. Hoboken*, 36 N. J. Law, 540; *Jersey City v. Morris Canal & Banking Co.* 12 N. J. Eq. 548; *Newark L. & C. Mfg. Co. v. Newark*, 15 id. 64; *In re Wells Avenue*, 4 N. Y. Supp. 301; *People v. Lambier*, 5 Denio, 9, 11; *New Orleans v. U. S.* 10 Pet. 662, 716; *Godfrey v. Alton*, 12 Ill. 29, 36; *Gardiner v. Tisdale*, 2 Wis. 153. The city in its corporate capacity can maintain the action. Lake Monona is a navigable body of water, and therefore a highway, and no obstruction can lawfully be placed in its waters. The city has under its charter entire control and jurisdiction over it. *State ex rel. Att'y Gen. v. Madison City R. Co.* 72 Wis. 612; *Shultz v. Milwaukee*, 49 id. 254; *Hayes v. Oshkosh*, 33 id. 314; *J. S. Keator L. Co. v. St. Croix B. Corp.* 72 id. 62; Dillon, Mun. Corp. § 656; *Yates v. Judd*, 18 Wis. 129; *Delaplaine v. C. & N. W. R. Co.* 43 id. 225; *Walker v. Shepardson*, 2 id. 383; *Barnes v. Racine*, 4 id. 454; *In re Eldred*, 46 id. 530; *Larson v. Furlong*, 50 id. 684; *Eau Claire v. Matzke*, 86 id. 291; *Neshkoro v. Nest*, 85 id. 126; *Waukesha H. M. S. Co. v. Waukesha*, 83 id. 475; *Jamestown v. C., B. & N. R. Co.* 69 id. 648; *Evans v. C., St. P., M. & O. R. Co.* 86 id. 603; *Racine v. J. I. Case Plow Co.* 56 id. 539; *Racine v. C. & N. W. R. Co.* 92 id. 118.

For the respondent *Heath* there was a brief by *Erdall & Swansen* and *W. R. Bagley;* for the respondents *Mayers* and another there was a brief by *H. W. Chynoweth* and *F. B. Wynne;* for the respondents *Kerns* and another there was a brief by *R. M. La Follette* and *Gilbert E. Roe;* and the cause was argued orally by *Mr. Chynoweth, Mr. Roe, Mr. J. L. Erdall,* and *Mr. Sam. T. Swansen.*

CASSODAY, C. J. The complaint alleges, in effect, that Spaight street, between Patterson and Livingston streets,

was regularly laid out, platted, and recorded, and is sixty-six feet wide, and was and is traveled, and runs along the south side of block 149. The several answers allege that the street was established and dedicated under and by virtue of the Doty plat, duly executed and recorded May 7, 1837; that November 27, 1868, the common council of the city widened the street by extending the northerly boundary thereof, opposite lots 4, 5, 6, 7, and 8 in block 150, into block 149, as therein stated; that December 4, 1868, the common council vacated the portion of the street therein described, along a part of the south side of block 149; and that the several lots in block 150 were platted by that same Doty plat. Thus, it was expressly claimed by all the parties to this action that the section of Spaight street in question was originally established by a recorded plat or plats, and that the same ran along the south line of block 149, or between blocks 149 and 150, as designated on such plat or plats. The court found that it was a public street, " and extends between blocks 149 and 150," but that it was such only by virtue of being used, worked, and traveled for many years. The court then found that the true location of that street, according to the various plats, was a number of feet north of the *present* north line of the street. Since the present north line of the street is some eight feet in the narrowest place, and some thirty-two feet in the widest place, north of the original south line of block 149, it is obvious that the court thus found that " the true location" of that section of the street was not between blocks 149 and 150, as previously found, and as claimed by all parties, but " a number of feet north of the present north line" of the street (that is to say, across some of the lots in block 149, or entirely north of that block). Counsel was asked on the argument how many feet north of the present north line of the street the trial court, by such finding, had in mind as the true location of the street, according to the various plats; and his answer was, "About 200 feet." Such

finding seems to be based upon the testimony of one of the surveyors to the effect that he had recently measured the distance on Patterson street from the shore line of Third Lake to the shore line of Fourth Lake, and found it to be 4,044 feet; that such distance, as indicated by the Pritchette plat of 1839, as near as he could ascertain it, was 3,762 feet (that is to say, 282 feet less than the true distance); and that, not with reference to where it is laid out, but according to that plat, the true location of Spaight street was approximately something over 200 feet north from where it is at present.

Of course, if the true location of the street, according to the plat, would be 200 feet north of where it now is, then the true location of block 149, according to the plat, would be still further north of such true location, and that would necessarily place block 150 where block 149 is now. That would necessarily, according to the plat, disarrange, not only the balance of Spaight street, but other streets in the vicinity, and besides would be likely to unsettle numerous titles. The city engineer testified to the effect that there were no original monuments, either natural or made, in the city, except one in the capitol park, and that he thought no one had ever been able to find that; that there was no plat which covered the entire city which would agree with the land as laid out over the entire city; that he used a map made by McCabe, city surveyer, June 16, 1868, of the street and block 149 in question, attached to the petition for widening the street; that that map agreed with the Prichette plat, recorded in the register's office in 1839; that there was a discrepancy between the two Doty plats and the Pritchette plat, as to the location of the street in question, varying from nothing to twenty-odd feet; that such discrepancy was owing to the fact that the Pritchette plat put the west end of the section of the street in question further south, and the east end of such section further north, than either of the

Doty plats; that he assumed that the Pritchette plat was evidence that the original land had been staked out in accordance therewith; that in making the map in evidence, of the premises in question, he resorted to old fences, old buildings, and the streets, as laid out and used for many years, as indicating the lines evidently established by former surveys in the city; that the Pritchette plat gives no dimensions, but that after he discovered that the McCabe plat practically agreed with it, and that that did give dimensions, he took those dimensions as being the true dimensions as originally staked out in block 149; that he assumed that the streets and blocks, as laid out, had approximately been accurately laid out by former surveyors; that the surveys he made in that part of the city correspond with those made by Capt. Nader and Prof. Conover; that, as his starting point in locating block 149, he took the stake located by Capt. Nader, after verifying the same to see that it was correct; that that gave him the south line of Jenifer and the west line of Patterson streets, and the corner of block 149; that, assuming that those two streets were accurately laid out, then block 149 would correspond with the Pritchette plat, with the exception of the widening of Spaight street mentioned; that the plat indicates that all regular lots are sixty-six feet wide, and all streets sixty-six feet wide, but as a matter of fact some of the lots run over more or less; that, if such actual distances were to control, houses would soon be in the streets, and streets in the lots, and so, in making the survey, he tried to ascertain from the streets, as laid out and the fences and buildings, as they were located, where the street actually was on the ground, as laid out on the plat. Such evidence as to the practical location of the section of Spaight street in question, as actually laid out under the plats, does not seem to be overcome by anything in the record,— certainly not by the mere fact that the actual distance between the respective shores of the two lakes on the

line of Patterson street is 282 feet greater than it would appear to be by the Pritchette plat.

The question recurs whether, under the evidence and the admissions in the pleadings, the trial court was justified in holding that such section of Spaight street was never dedicated to the public as a street by any of such plats, and that it was never laid out, located, or established as such at the point or points fixed by such plats, but was a public street only by virtue of having been used, worked, and traveled as a street for many years. It is sixty years since the Doty plat was recorded, and fifty-eight years since the Pritchette plat was recorded, and twenty-nine years since the McCabe map was made. Those two plats, as to the premises in question, differ from each other as indicated, yet such difference is too slight to prevent a practical location of the street under the Pritchette plat. It appears that Spaight, Livingston, Patterson, and Jenifer streets have each and all been actually located, opened, and traveled for a period of forty years or more, that block 149 is between those streets, and that during that time lots in that block and other blocks in the vicinity have been occupied by persons residing thereon. In the absence of any original monuments which can be ascertained, as indicated, such locations and occupancy, and the lines and corners of such streets and blocks thereby established, as indicated by old fences, old buildings, and the streets as so laid out and used for many years, and stakes and monuments established by former surveyors, were competent evidence, as tending to prove — and in our opinion do clearly prove — that the section of Spaight street in question was more than forty years ago actually located and laid out under and pursuant to the Pritchette plat, and hence the same was a practical construction of that portion of that plat. Numerous authorities might be cited in support of that proposition. *Marsh v. Mitchell,* 25 Wis. 706; *Nys v. Biemeret,* 44 Wis. 104; *Racine v. J. I. Case Plow Co.* 56

Wis. 539; *State v. Schwin,* 65 Wis. 207; *Miner v. Brader,* 65 Wis. 537; *Hrouska v. Janke,* 66 Wis. 252; *Kœnigs v. Jung,* 73 Wis. 178; *Racine v. Emerson,* 85 Wis. 80; *Riley v. Griffin,* 16 Ga. 144; *S. C.* 60 Am. Dec. 726. Thus, in one of the cases cited it was held that: "In ascertaining the true location of the streets, lots, and blocks in a city, according to the plat and survey thereof, regard is to be had (1) to the natural monuments referred to therein, and (2) to the artificial monuments placed by the surveyor to mark lines or boundaries, before resorting to the courses and distances marked on the plat or survey. If no monuments are mentioned or in existence, evidence of long-continued occupation, though beyond the given distance, is admissible. If the description is ambiguous or doubtful, parol evidence of the practical construction given by the parties by acts of occupation, or recognition of monuments or boundaries, is admissible." Courts have gone still further, and held, in effect, that a competent surveyor may, as a witness, in a proper case and under proper circumstances, give his opinion as to whether certain piles of stone and certain mark or marks on trees were made by a surveyor, and indicated a boundary line. *Davis v. Mason,* 4 Pick. 156; *Knox v. Clark,* 123 Mass. 216; *Brantly v. Swift,* 24 Ala. 390; *Clegg v. Fields,* 7 Jones, Law (N. C.), 37. Certainly a mere discrepancy in distance is not to overcome such practical location of the street under and in pursuance of the plat.

We must hold, upon the evidence in the record as well as the pleadings, that the section of Spaight street in question was so laid out and opened under and in pursuance of the Pritchette plat, and that the recording of that plat was a dedication of such street to the public, and that such dedication covered and included the whole width of that street as indicated on that plat.

2. The mere fact that the eastern portion of that section of the street was widened by extending the same north into

block 149, as mentioned, and that the western portion thereof was narrowed by vacating a piece on the north side of the street, as mentioned, in no way changed the south line of the street, as located under that plat.

3. Nor does the fact that that section of the street was never worked or fitted for travel clear to the south line thereof, nor at all south of the iron railing or fence mentioned in the pleadings and findings, prevent the city from working and fitting the same for travel clear to the south line thereof as located under the Pritchette plat, whenever it may choose to do so. It is well settled that no mere *non-user* of that side of the street for the time mentioned can operate as a surrender or abandonment of the same for the purposes of a public street. *Reilly v. Racine*, 51 Wis. 526; *State v. Leaver*, 62 Wis. 387; *Childs v. Nelson*, 69 Wis. 125; *Maire v. Kruse*, 85 Wis. 302; *Nicolai v. Davis*, 91 Wis. 370. In this last case it was held that "the mere fact that the plaintiff had for many years encroached upon the road, by putting a portion of his fences in the road and otherwise, did not bar the town from the legal right of having the road at any time opened to its full width as originally surveyed and laid out." It follows from what has been said that the space between the iron railing or fence and the south line of the street, as so located under the plat, was at the time of the commencement of this action, and is now, a part of Spaight street, and may be worked and fitted for public use as a part of the street whenever the city may choose to do so.

4. The several defendants, as abutting lot owners, except *Kerns*, justified what they had done, respectively in respect to removing stone, earth, and other materials from within the limits of the street as so laid out, by claiming that they severally owned the land clear up to the iron railing or fence, and that the street did not extend south of that railing or fence, and the findings of the court are in harmony with such claim. From what has been said, it is obvious

that such ruling was erroneous. The question recurs whether the city has such an interest in that branch of the relief demanded as to maintain this action. The right of the city in the space between the iron railing or fence and such south line of the street as so located being as stated, it follows, under the repeated decisions of this court, that the city has such an interest therein that it may maintain this action so far as to restrain the respective defendants, as abutting lot owners, from so removing stone, earth, and other materials from within the limits of such street, or from impairing the embankment of the street as it now exists, or making it more expensive and difficult to fit the whole width of the street for travel. To that extent the injunction should have been made perpetual. In support of this proposition it is only necessary to cite the following cases: *Waukesha Hygeia Mineral Spring Co. v. Waukesha,* 83 Wis. 475; *Neshkoro v. Nest,* 85 Wis. 126; *Eau Claire v. Matzke,* 86 Wis. 291.

5. Counsel contend, in effect, that block 150 on the plat is itself a monument, and that, according to that plat, there appears to have been a strip of land between the section of Spaight street in question and the lake shore, for the whole distance, which is divided up into lots numbered from 1 to 9, inclusive, and hence that the plat should be so construed and modified as in some way to satisfy such calls of land for such lots. But the fact remains that the whole of block 150 is south of Spaight street on the plat, and hence is necessarily south of it, as actually located under and in pursuance of the plat. In other words, the location of the streets, as mentioned, necessarily located that block. Certainly the several owners of land between that street, as so located, and the lake shore, have all the rights of abutting owners upon the street, and also all the rights of riparian owners on the shore of the lake. But if there is any defendant who owns no land between the street, as so located, and the shore of the lake, then we are unable to perceive upon what theory

he could properly be regarded as an abutting owner or riparian owner. A mere mistake as to the quantity or shape of the land in the block, or as to whether the shore of the lake at some particular point was within the limits of the street, cannot be allowed to frustrate the plat, as such mistake comes within the well-recognized maxim: *Falsa demonstratio non nocet.* *Sherwood v. Sherwood,* 45 Wis. 364; *Paine v. Benton,* 32 Wis. 496; *Dupont v. Davis,* 30 Wis. 175; *Kennedy v. Knight,* 21 Wis. 347. The dimensions of the several lots in the block, as they appear upon the plat, must, like other courses and distances, yield to the actual condition of things as they existed, and be determined by the practical construction and location of the plat upon the grounds.

6. There is another branch of this case. The complaint alleges, in effect, that the city has jurisdiction over the entire surface of the lake; that the defendants have placed stones, earth, and other materials in the waters of the lake, not only within the limits of the street, but outside of, and beyond the limits of, the street, even to the distance of sixty or seventy feet from the south line of that street,— and prays an injunction to restrain the defendants from so filling in the lake. The several answers allege, and the court found, in effect, that such jurisdiction of the city over the lake was for limited and special purposes only, but not for any of the purposes set forth in the complaint. So far as the right of the city to work and prepare the street for travel for the whole width thereof, even where the shore of the lake may be within the limits of the street, enough has already been said. But the question recurs as to whether the city may properly, in this action, restrain the defendants from so filling in the lake outside and beyond the limits of the street.

The provisions of the charter, cited in the brief of counsel, give the city power to enact ordinances for the benefit of trade, commerce, and health, and to provide for the abate-

ment and removal of nuisances thereunder, and "generally to take such other measures for the public health as shall be deemed proper." Such police regulations may well be conceded, but they do not authorize the city to restrain the filling in of the lake in question, outside of the limits of the street. Under the repeated decisions of this court, there can be no question but that the title to the bed of the lake was and is in the state. But such of the defendants as own lots between the shore of the lake and the south line of the street have the rights of riparian owners on the shore of the lake. Such rights include the right of each to construct in front of his land, in shoal water, proper wharves, piers, and booms in aid of navigation, without obstructing it, far enough to reach water actually navigable for such boats as are in use or appropriate to the lake. *Cohn v. Wausau Boom Co.* 47 Wis. 322; *J. S. Keator Lumber Co. v. St. Croix Boom Corp.* 72 Wis. 82; *Northern Pine Land Co. v. Bigelow*, 84 Wis. 163, 164; *Priewe v. Wis. State L. & Imp. Co.* 93 Wis. 547, and cases there cited. Such right, however, is a private right, and is subordinate to the public right to navigate the lake, and may be regulated or prohibited by law. *Id.* Obviously, the city has no proprietary or corporate interest in the lake, nor the shore of the lake, outside of the limits of the street. Nor does it appear that the acts complained of are such as to affect the health of any one. We are clearly of the opinion that the city has no such interest or right in the lake or the waters thereof, outside of the limits of the street, as to enjoin the defendants from the acts complained of. *Milwaukee v. M. & B. R. Co.* 7 Wis. 85; *Sheboygan v. S. & F. du L. R. Co.* 21 Wis. 667; *Racine v. Crotsenberg*, 61 Wis. 481; *Janesville v. Carpenter*, 77 Wis. 288. In such a case the right of the city to remove such a purpresture or public nuisance is no greater than that of an individual, and this court has expressly held that an individual could not remove the same. *Larson v. Furlong*, 50 Wis. 681. In England such purprest-

ure or public nuisance was removable or abatable only by suit of the crown, having superintendence and control over public rights, at the instance of the attorney general. Gould, Waters, §§ 21, 167. In this country such right of action is in the state. Id. §§ 93, 168. Thus, in *People v. Vanderbilt*, 28 N. Y. 396, it was held that "the remedy to prevent the erection of a purpresture and nuisance in a bay or navigable river is by injunction at the suit of the attorney general." See, also, *People ex rel. Teschemacher v. Davidson*, 30 Cal. 379. We must hold that the court properly refused to enjoin the defendants from filling in the lake outside of the limits of the street, and that as to that branch of the case the complaint was properly dismissed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in accordance with this opinion. In view of the fact that the findings of the trial court are sustained in part and set aside in part, costs and disbursements are allowed in favor of the plaintiff and against the defendants, except *Kerns*, for the expense of printing the case and for the fees of the clerk of this court, but no other costs or expenses are allowed to either party.

97 416
98 427

97 416
d101 375

97 416
104 668

97 416
107 91

97 416
112 480