Lewis vs. Prien.

## Lewis, Appellant, vs. Prien, Respondent.

*November 20 — December 10, 1897.*

(1) *Court and jury: Directing verdict.*   (2, 3) *Boundaries: Locating lost corner: Evidence.*

| 98 | 87 |
|----|----|
| 102 | 215 |
| 104 | 569 |

| 98 | 87 |
|----|----|
| 105 | 622 |

| 98 | 87 |
|----|----|
| 106 | 72 |

| 98 | 87 |
|----|----|
| 108 | 23 |

| 98 | 87 |
|----|----|
| 112 | ¹141 |

1. A court is not warranted in directing a verdict unless all the evidence produced, giving it the most favorable inference it will reasonably bear, and admitting that it establishes all that it tends to establish, would not sustain a verdict for the other party. The fact that the evidence preponderates one way so strongly that it would become the duty of the court to set aside a verdict to the contrary, does not warrant the court in taking the case from the jury.

2. The question being as to the original location of a stake marking the corner of a lot, proof that the measurements from the nearest known original stakes on the same line, or points established as correct according to the original survey, reached a location for the disputed corner consistent with that claimed by one of the parties, is admissible in corroboration of her evidence respecting the former location of the stake.

3. The proper method of procedure in locating a lost exterior corner of an inside lot in a block is to start at the nearest known point on one side of the lost corner on the line on which it was originally established, measure to the nearest known corner on the other side on the same line, and, if the length of the line is in excess of that called for by the original survey, divide it between the tracts connecting such two known points, in proportion to the length of the boundaries of such tracts on such line, as given in the survey. To establish such lost corner by measuring from a corresponding lot corner on the other side of the block, parallel with the opposite side of the lot, to the intersection with the boundary of the block in which the lost corner is located, is erroneous.

Appeal from a judgment of the circuit court for Dane county: R. G. Siebecker, Circuit Judge. *Affirmed.*

Action of ejectment. The correct location of the south boundary line of lot 8, block 4, of Brooks' addition to the city of Madison, was the disputed question, and that turned on the proper location of the southeast corner of the lot.

---

Lewis vs. Prien.

---

The following is a diagram of the block, with the property owned by the respective parties and the disputed land designated thereon:

University Avenue.

At the close of the evidence there was a motion by plaintiff's attorneys for the direction of a verdict in his favor, which was denied and the ruling excepted to. The case was submitted to the jury under instructions to which no exception was taken. The finding was in favor of the defendant. Plaintiff's attorneys moved the court to set aside the verdict and grant a new trial, which was denied and the ruling excepted to. Judgment was rendered in favor of defendant and plaintiff appealed.

For the appellant there was a brief by *Keyes & Shuttleworth* and *G. E. Roe,* and oral argument by *Mr. Roe.* They contended, *inter alia,* that all the corners of lot 8 except the southeast corner are fixed by the original surveyor's stakes. From these monuments the law requires that the disputed line should be established. To fix such line it is only necessary to continue the south line of lot 16 from the southeast corner of that lot eastward in a straight line. Reference to

the plat shows clearly that the south line of lot 8 is a continuation of the south line of lot 16 and parallel with the north line of lot 8, which is merely a continuation of the north line of lot 16. The same plat also shows the disputed line to be at right angles with the east boundary of lot 16, and the location of the surveyor's stake at the intersection of these lines is shown without dispute. Under such circumstances the location of the disputed line by the method adopted by Dodge is the only correct one. *Marsh v. Mitchell*, 25 Wis. 706; *Fleischfresser v. Schmidt*, 41 id. 223; *State v. Schwin*, 65 id. 207, 215; *Pickett v. Nelson*, 79 id. 9; *Pernam v. Wead*, 6 Mass. 131; *Grier v. Pennsylvania Coal Co.* 128 Pa. St. 79; *Ferguson v. Bloom*, 144 id. 549; *Thornberry v. Churchill*, 16 Am. Dec. 125; 4 Am. & Eng. Ency. of Law (2d ed.), 778, 805, and notes.

For the respondent there was a brief by *Olin & Butler*, and oral argument by *H. L. Butler*.

MARSHALL, J. Did the court err in refusing the motion to direct a verdict for plaintiff? That depends on whether the evidence was all one way to the effect that when the original survey was made the disputed corner was established and the stake set at the point claimed by appellant. The invariable rule governing such cases is too well known to need more than a statement of it here, were it not for the fact that the force of such rule does not appear to be appreciated by the learned counsel for appellant. When a motion is made to direct a verdict for one party, the court is called upon to say, taking all the evidence produced, giving thereto the most favorable inferences it will reasonably bear, and admitting that it establishes what it tends to establish, whether it will sustain a contrary verdict. If so, the motion must be denied. *Leiser v. Kieckhefer*, 95 Wis. 4; *Lawrence University v. Smith*, 32 Wis. 587; *O'Brien v. C. & N. W. R. Co.* 92 Wis. 340; *Dirimple v. State Bank*, 91 Wis. 601. The doctrine that obtains

Lewis vs. Prien.

in some jurisdictions, that where the evidence preponderates so strongly one way that in case of a verdict otherwise it would be the duty of the court to set it aside and grant a new trial, a verdict should be directed, has not obtained a foothold here. The rule of this court is in accord with the weight of authority on the subject, including that of the federal supreme court. *Elliott v. C., M. & St. P. R. Co.* 150 U. S. 245; *Schofield v. C., M. & St. P. R. Co.* 114 U. S. 615; *Delaware, L. & W. R. Co. v. Converse,* 139 U. S. 469; *Aerk-fetz v. Humphreys,* 145 U. S. 418; *Texas & P. R. Co. v. Cox,* 145 U. S. 593. Fuller, C. J., in the last case cited, states very tersely the rule, iterated and reiterated by this court, thus: "The case should not be withdrawn from the jury unless the conclusion follows as a matter of law from the evidence, that no recovery can be had upon any view which could properly be taken of the facts the evidence tends to establish." So it is said that the jury, in all cases where there may reasonably be opposing inferences from the evidence, are the exclusive judges to weigh such evidence and draw the proper inference.

As before intimated, the only justification for discussing at so much length the familiar principle above referred to, is that counsel for appellant, in support of their contention that the trial court erred in denying the motion to direct a verdict, do not appear to claim there was no evidence in opposition to their theory, which, if believed, would sustain an opposite theory. The most that is claimed, apparently, is that there was not much such evidence. True, the evidence on the part of the plaintiff was very positive and clear that the southeast corner stake of lot 8, as it stood at the time of the trial, was in place where located by Douglas, who made the original and governing survey, and the evidence tended strongly to show that the defendant's conduct for years after she purchased and took possession of her property, was more consistent with plaintiff's claim as to the true boundary line

than with the opposing claim upon which she relied.   But
defendant testified that the stake, when she purchased, was
upwards of a foot further north than where plaintiff sought
to establish the true corner; that subsequently it was re-
moved, and later set in  the location alleged by plaintiff to
be the proper place, and there was considerable corroborat-
ing evidence to the. same  effect.   It was conceded on both
sides that the original location of the stake would govern if
it could be ascertained, whether consistent with the measure-
ments noted on the plat or not; but as to such location the
evidence was squarely in conflict.  If the place where plaint-
iff's evidence  tended to prove  the stake was originally set
was in accordance with the truth, then the eaves of defend-
ant's house projected over the boundary line onto plaintiff's
property about four inches.   If the place where defendant's
evidence  tended to  prove was the  original location of the
stake was in accordance with  the  truth, then  there was no
encroachment by defendant upon plaintiff's premises.  With-
out taking time and space to give the evidence in detail,
enough has been said to show generally that there was evi-
dence tending to  sustain each of the opposing claims, and
yet the  evidence was  so in conflict that a jury might prop-
erly say that they could not determine therefrom, with rea-
sonable certainty, where the stake was  originally set, and
might properly proceed to  re-establish the  corner from the
evidence, under the rules governing the establishment of lost
corners.   So  the  motion  to direct a' verdict was properly
overruled.         ·

     Some questions asked of witness Conover, the civil engineer
who made a  survey at defendant's request and testified to
his work upon the trial, were objected to on the ground that
such questions called for evidence of a new survey, to demon-
strate where the disputed corner ought to be, instead of a
survey from original monuments mentioned in the plat and
original stakes still in existence, for the purpose of determin-

ing the point in controversy, i. e. where the stake was set
at the time of the original survey. We think the objections
were properly overruled, because the questions objected to
had a legitimate bearing on the real issue between the par-
ties, that is, the original location of the corner stake, and the
trial judge expressly limited the evidence to that and to
the establishment of the corner, as one not determinable by
proof of the location of the original stake, if the case failed
on both sides on that point. Moreover, the witness testified
to the location of the southeast corner of the block, as estab-
lished by him by measuring from original stakes still in ex-
istence. He measured from such stakes, on the west and
south exterior boundaries of the block, and by that means
established the southeast corner, and from the point so estab-
lished made his final measurements, testified to on the trial.
That was a proper way to proceed in view of the controversy
on which the case turned. *Racine v. J. I. Case Plow Co.* 56
Wis. 539; *Miner v. Brader*, 65 Wis. 537; and *Madison v.
Mayers*, 97 Wis. 399. True, if the facts were undisputed as
to the place where the corner of lot 8 was originally estab-
lished, proof of surveys made to establish it would have been
immaterial; but, that being the disputed question, proof that
measurements from the nearest known original stakes on the
same line, or points established as correct according to the
original survey, reached a location for the disputed corner
consistent with that claimed by the defendant, was proper,
as corroborating her evidence respecting the former location
of the stake.

It is further contended, as we understand it, that the evi-
dence does not sustain the verdict because, according to the
undisputed evidence, an extension of the south line of lot
8 from the southwest corner, parallel with the north bound-
ary line, shows with mathematical certainty that the proper
location of the disputed corner is as claimed by plaintiff.
Mr. Dodge, a surveyor called by plaintiff, testified that he

Lewis vs. Prien.

located the corner by that method; that he paid no attention · to the location of the southeast and northeast corners of the block. We know of no rule to warrant the location of a lost corner in that way. The unvarying rule to be followed in such cases is to start at the nearest known point on one side of the lost corner, on the line on which it was originally established; to then measure to the nearest known corner on the other side, on the same line; then, if the length of the line is in excess of that called for by the original survey, to divide it between the tracts connecting such two known points, in proportion to the lengths of the boundaries of such tracts on such line, as given in such survey. To establish the lost exterior corner of an inside lot ·of a block of platted land by measuring from a corresponding lot corner on the other side of the block, parallel with the opposite side of such lot, to an intersection with the side ·of the block in which the lost corner exists, and then establish it at the point of intersection, would be as erroneous as to run a line from the quarter-section corner on the west side of a section, through to the east side, parallel with the north or south boundary, to locate the quarter-section corner on such east side. The method always followed in re-establishing corners, is to measure the line connecting the nearest known corners, on the same line, on either side of the lost corner, and then divide the excess, if any be found, as before stated. *Pereles v. Magoon*, 78 Wis. 27; *Jones v. Kimble*, 19 Wis. 429; *O'Brien v. McGrane*, 27 Wis. 446. The witness Conover located the southeast and northwest corners of block 4, and then proceeded as indicated, to determine the location of the disputed corner. That was the only proper way to locate the corner if it was what is known as a lost corner; and it was a proper way to test the truth of the witnesses who testified to the actual location of the stake.

There were numerous exceptions taken to the exclusion ·of evidence offered on rebuttal, all of which has been·exam-

Independent Order of Foresters vs. Commissioner of Insurance.

ined without discovering any ground for a reversal of the judgment.   This opinion could be drawn out to great length by discussing such exceptions in detail, but as none of them involve any but very familiar principles, a statement of the reasons for overruling them on this appeal would be without value as a guide in future trials, therefore it is not deemed advisable to say more in regard to them.

*By the Court.*— The judgment of the circuit court is affirmed.

