IN RE VOLUNTARY ASSIGNMENT OF ADVANCE WOODWORK COMPANY: EISEMAN, Assignee, Appellant, vs. CURTIS COMPANIES, INC., Respondent.

*April 10—May 9, 1939.*

For the appellant the cause was submitted on the brief of *George H. Moeller* of Milwaukee.

For the respondent there was a brief by *Churchill, Churchill, Davis & Rapkin* of Milwaukee, and oral argument by *Joseph E. Rapkin* and *W. H. Churchill*.

WICKHEM, J. On November 22, 1937, Advance Woodwork Company made a voluntary assignment for the benefit of its creditors to Laurence H. Eiseman. On or about August 23, 1937, Advance Company was indebted to Curtis Companies upon an open account for goods, wares, and merchandise sold to it in the sum of $464.73, and upon a promissory note dated September 23, 1935, in the amount of $675 with interest from November 30, 1936. On or about August 25, 1937, Advance Company made and executed a note in the sum of $825 payable to the order of Curtis Companies, due sixty days after date. This note was sent to Curtis Companies with the understanding that the latter would fill the balance of an unfilled order. Among other things the letter stated that:

"On the old demand note of $675 which you hold we assign the following accounts to be paid to you as we receive them: Ralph Drought, $168.21; John Dietz, $370; Stanley Pinkalla, $187.91. . . . We are also inclosing our note for $825 for which we will give you assignments thirty days hence."

The $825 note was returned to the Advance Company with a letter of transmittal for the purpose of having the latter indorse the assigned accounts upon the note. The Advance Company entered upon the back of the note the following:

"Guaranteed by the following accounts: Gilbert Fiedler, $100; A. J. Hermann, $109.50; A. R. Lampe, $125; Eu-

gene Pinkalla, $100; Math Thiel, $300; M. Vierheilig, $100; total, $834.50."

Upon returning this note to Curtis Companies the latter delivered the balance of its order to Advance Company. In keeping its ledger accounts Advance Company made notations after the assigned accounts indicating that they were pledged to Curtis Companies. Thereafter, various payments were made upon these accounts and originally the sums received were deposited in the general account of Advance Company. By September 23, 1937, Advance Company was in financial difficulties and called a creditors' meeting. At or about this time Advance Company consulted its attorney as to what should be done with the sums, amounting to about $500, that had been collected upon the assigned accounts, and was advised to put this in a safety-deposit box and keep it separate from other accounts. The amounts in the general accounts at that time, together with such sums as later came in, were so treated. On November 20, 1937, Advance Company withdrew these funds from the safety-deposit box and purchased a $1,500 cashier's check payable to Ralph Drought, as trustee, and by him deposited with the clerk of the court. On November 22, 1937, an assignment for the benefit of creditors was made by Advance Company. The assignments to Curtis Companies were attacked by the assignee for the benefit of creditors as fraudulent and ineffective to create a lien for the reason that the assignor did not surrender dominion and control over the assigned accounts. The point at which the assignment is attacked is the agreement by the debtor-assignor *to collect and transmit the proceeds of the accounts* to its creditor-assignee. The trial court correctly concluded that this was not such a reserved dominion as to invalidate the assignment. In *Benedict v. Ratner,* 268 U. S. 353, 364, 45 Sup. Ct. 566, 69 L. Ed. 991, the court states:

"The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same

whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not."

However, the court points out a distinction which is literally applicable to the case at bar and which we believe to be sound. It says:

"There must also be the same distinction as to degrees of dominion. Thus, although an agreement that the assignor of accounts shall collect them and pay the proceeds to the assignee will not invalidate the assignment which it accompanies, the assignment must be deemed fraudulent in law if it is agreed that the assignor may use the proceeds as he sees fit."

In this case the only dominion reserved is such as is necessary to enable the assignor to collect the accounts on behalf of the assignee. This is not reserved for the benefit of the assignor but for the convenience of the assignee. These accounts were not evidenced by commercial paper. The addresses and the circumstances of the debtors were known only to the assignor and the device is merely to make less onerous and expensive to the assignee the application of this security to the debt. The assignor simply assumed the burden of collection but did not reserve any right to use or control the proceeds of the collection. In this connection it is suggested that the assignee consented to the dominion of the assignor over the accounts by reason of the fact that no objection was made to the deposit of these in the debtor's general bank account, and that the practice on previous assignments was for the Advance Company to collect deposits and transmit to Curtis Companies. This is urged as open only to the inference that the parties intended to leave full dominion over the accounts with the assignor. As a further make-weight or inference in this direction it is urged that Curtis Companies could not have controlled the accounts because it

did not know the persons who owed the accounts or their addresses. We think none of these circumstances compels the inference that the parties intended to vest full dominion over the accounts in the assignor. We doubt very much if any substantial inference in this direction can be drawn from these facts, but at any rate the findings of fact are to the contrary and are not against the great weight and clear preponderance of the evidence. It is quite evident that the assignment of accounts which are not evidenced by instruments present difficulties not present in the transfer of other types of property. Manual delivery of the chose is impossible because it is an intangible. Manual delivery of an instrument constituting formal written evidence of it cannot be made because it is not so evidenced. The most that can be done is to invalidate as fraudulent an assignment which leaves the assignor with full dominion over the account. For the reasons given, we conclude that this is not such an assignment.

Reliance is had upon *Dirimple v. State Bank of Phillips,* 91 Wis. 601, 65 N. W. 501. This case is not in point. There one who was logging certain lands under a subcontract assigned this contract to plaintiff and notified the principal contractor who agreed to pay to assignee all moneys due upon the subcontract as he received them from the owner of the premises. The question was whether under these facts there was a present transfer of the fund received by the principal contractor and deposited by him in defendant bank. This is a wholly different problem and has no bearing upon this case.

*By the Court.*—Order affirmed.