JONES vs. KIMBLE and another.

In re-establishing a lost quarter post on a north and south section line, any deficiency in the length of such line by actual measurement as compared with that indicated by the government survey should be divided between its north and south parts in proportion to their respective lengths as indicated by the same survey; and the whole deficiency should not be thrown on the north half section.

APPEAL from the Circuit Court for *Dodge* County.

Ejectment. The case is stated by the court. The defendants appealed from a judgment in favor of the plaintiff.

*D. J. Pulling*, for appellants.
*F. Hamilton*, for respondent.

*By the Court*, DIXON, C. J.   This is a case of lost bound-
ary or survey.   The plaintiff owns the west half of the north-
west quarter of section two.   The defendants are in possession of
the tract of land immediately adjoining on the west, being the
east half of the north-east quarter of section three in the same
township.   The action is brought to settle the boundary line
between them.   It is ejectment for a strip of land 10 links
wide on the north and 116 links wide on the south, lying
along the west side of the plaintiff's tract, and claimed by him
to be covered by his patents, and containing 2 41–100 acres.
It seems that the strip is in possession of the defendants, and
claimed by them as part of the adjoining section three.   The
case turns mainly upon the testimony of the county surveyor.
It appears that the corner of the adjoining sections, thirty-four
and thirty-five in the township next north, is not identical with
the corner of sections two and three.   It is ten links east of the
corner of sections two and three.   The surveyor finds the
monuments established by the government and identifies both
corners.   It would seem that the defendants occupy and claim
to the corner of sections thirty-four and thirty-five, thus pass-
ing 10 links east of the monument fixing the dividing line be-
tween sections two and three.   Upon this point there is no
difficulty.   There can be no doubt that the definitely ascertain-
ed monument fixed by the government surveyors as the bound-
ary between sections two and three must govern.   This prin-
ciple is well settled and is not disputed by the counsel for the
appellants.   The difficult question arises in the ascertainment
of the south-west corner of the tract owned by the plaintiff.
The quarter post or mound on the line between sections two
and three, which should be the true south-west corner of the
plaintiff's land, is lost.   That on the east line of section two,
between sections one and two, is also lost.   All the other cor-

ner and quarter posts or monuments of the two sections are found and identified by the surveyor. The sections are fractional, each containing less-than 640 acres of land. According to the public survey, as indicated by the plat and return of the United States surveyors, section two contains 631 8–100 acres, and section three 630 60–100 acres. By an accurate survey by the county surveyor, the public measurement is found to fall short by 12 71–100 acres in section two, and 7 98–100 acres in section three. The true contents of section two, as ascertained by measurement from the established corners, is 617 37–100 acres ; and of section three, 622 62–100 acres. The rule in the public surveys that where the section is fractional, containing less than 640 acres, the loss shall be thrown on the quarter-quarter sections on the north, is well understood. It was followed by the public surveyors in this case, or, intended so to be. It accordingly appears from the official plat in the land office, that the south half of each section was divided into quarters containing 160 acres each. The north half was divided so as to give two full eighty acre tracts on the south, and four fractions on the north, each fraction containing less than 40 acres. The fraction owned by the plaintiff, being the north half of his tract, or the north-west quarter of the north-west quarter of the section, appears by the public survey to contain 38 6–100 acres. The south half appears to contain an even 40 acres, thus giving to the plaintiff 78 6–100 acres. The deficiency in the quantity of land in each section from what it appears by the public survey, seems to have arisen from mistakes in the measurements of the north and south lines. The east and west lines equal and rather exceed the required lengths. The north and south line between the sections appears by the public survey to be 79 chains and 5 links long. By actual measurement it is found to be only 77 chains and 20 links. The county surveyor, in establishing the lost quarter post and boundary of the plaintiff's land on the south, ran a line from corner to corner between

the sections, and then apportioned the deficiency between the section quarters and established his monument. This mode of survey distributes the deficiency equally throughout each section, so that each subdivision loses its proportionate share. The tract of land owned by the plaintiff becomes proportionately less as the whole section is less. Instead of 78 6–100 acres, he has but 76 57–100 acres. The other subdivisions of the section lose in like manner. The county surveyor, it appears, proceeded under the act of the state legislature of March 21st, 1862. Laws of 1862, chap. 120. But without regard to that act we are of opinion that the method adopted by him was right. It is the method recognized by the law in such cases. If the monument established by the public survey had been found, of course that would govern notwithstanding the act. But the monument was lost, and the question then was as to the principles upon which it was to be established. The whole length of the line between the ascertained corners varied from the length called for, and the intermediate monument was lost. In such case, it cannot be *presumed* that the variance arose from the defective svrvey of any *part*, but the conclusion must be, in the absence of circumstances showing the contrary, that it arose from the imperfect measurement of the *whole* line, and the variance is distributed between the several subdivisions of such line in proportion to their respective lengths. *Moreland v. Page*, 2 Clarke (Iowa), 139.

The objection that the purchasers of the supposed full tracts are entitled to full measure, and that the tracts designated as fractional should suffer the loss arising from the defective survey, is well answered in the above case. "The purchases were all made with reference to the public survey. The purchaser of a fractional forty acre tract, located on the north or west side of the township, to the extent of the quantity designated in that fraction on the plat, and by the field notes of the original survey, purchased as *definite and determined a quantity* of land, having *as fixed and determined relations to the whole tract*,

the survey of which is now lost, as did any one who purchased those several tracts not designated as fractional. The person who might purchase a tract on the north side of the township, designated on the official plat of the original survey as containing thirty-nine acres, had *as perfect a vested right* to receive thirty-nine full acres, as he who purchased a quarter section in any other part of this body had to the hundred and sixty acres called for by his patent."

On the whole we see no error in the judgment of the court below, and it must accordingly be affirmed.

Judgment affirmed.