Neff vs. Paddock and others.

1. *Boundaries of land.—Government survey.*
2. *Power of town supervisors to remove fence from highway.*

1. Lines run in accordance with the monuments fixed by the original government survey must control in determining the boundaries of land, as against any subsequent survey under authority of an act of the legislature.
2. Where an adjoining land-owner moves his fence into the middle of a highway so as to endanger or inconvenience travel thereon, he commits a nuisance; and the town supervisors are authorized, and it is their duty, to remove such fence summarily.

APPEAL from the Circuit Court for *La Fayette* County.

Trespass *quare clausum*, for the removal of plaintiff's fence. Defense, that the *locus* was part of a well-known and long traveled highway, upon which plaintiff had willfully built his fence ; and that defendants removed it by direction of the town board of supervisors, doing no unnecessary damage.

An act of congress, approved February 11, 1805, provides as follows : " Sec. 2. That the boundaries and contents of the several sections, half-sections and quarter-sections of the public lands of the United States shall be ascertained in conformity with the following principles : * * * * 2. The boundary lines actually run and marked on the surveys returned by the surveyor-general * * shall be established as the proper boundary lines of the sections or subdivisions for which they were intended ; * * * and the boundary lines which shall not have been actually run and marked as aforesaid, shall be ascertained by running *straight lines from the established corners to the opposite corresponding corners.*"

By the Revised Statutes of this state, of 1849, the supervisors of towns were empowered, in the manner and under the restrictions there provided, " to lay out and establish, upon actual survey, such new roads in their respective towns as they [might] deem necessary and proper ;" and all roads thus laid out were required to be not less than four rods wide. R. S. 1849, ch. 16, secs. 2 and 70. In June, 1852, the proper town supervisors ordered a survey for a road to be made " north and south through the center of section 23," in which the premises in dispute lie. In July following, one Brown, the county surveyor, " surveyed a road running north and south through the center of said section 23," taking as such center the point of intersection of the quarter-section lines run in accordance with the act of congress above recited. There is no record to show that a road was actually laid out by the town supervisors along the line thus surveyed.

There was evidence, however, that there had been a highway along said line, by actual uninterrupted use, since 1852, and that the owners of the adjoining land at the place in dispute had built their fences two rods east and west, respectively, of the line thus determined.

In 1862, the legislature of this state passed an act (Laws of 1862, ch. 120), which provides (sec. 4) that: "Whenever a surveyor is required to make a subdivision of a section as determined by the United States survey, except where the section is fractional, he shall establish the interior quarter-section corner therefor *at a point*" equidistant from the north and south quarter-section corners, and also equidistant from the east and west quarter-section corners. In 1864, at the request of the owners of land in said section 23, Mr. Brown subdivided the section and established the center thereof in accordance with the provisions of said ch. 120. The center as thus determined was two rods west of that determined by the former survey. In 1867 the plaintiff purchased the west half of the southeast quarter of said section; and in May, 1868, he removed his west fence one or two rods further west, leaving two rods between it and the quarter-section lines as determined by the survey of 1864. This is the fence which was torn down by the defendants, under the direction of the town supervisors.

The court instructed the jury that "under the statute, roads not recorded which shall be used ten years, become legal highways, but only for the width usually traveled and necessary for the passage of travel; that the statute authorizing the supervisors to lay out roads four rods wide has no application to such highways by user; but that if the road is inclosed by a fence on each side, and the distance between the two fences does not exceed the width of ordinary highways, that would be evidence that all the land between the two fences was dedicated to the public." It further

charged them that "if a person knows that a certain strip of his land is claimed by the public as part of a highway, and he builds a fence upon it so as to hinder travel thereon, the supervisors may move such fence, doing no unnecessary damage, provided they can show that such parcel of land was in fact a highway. If a person inadvertently puts his fence upon ground which is part of a highway, not knowing the limits of the highway as the public claims it, this is a case of *encroachment*, which should be dealt with according to sec. 102, ch. 19, R. S." * The court also gave the further instruction recited in the last paragraph of the opinion.

Verdict and judgment for the defendants; and the plaintiff appealed.

*Cothren & Magoon,* for appellant, contended, 1. That it appeared from the evidence that the two rods and over in width of what is now claimed as highway,

---

* Ch. 19, R. S., provides (sec. 1) that the supervisors of the several towns in this state "shall be the commissioners of highways for their respective towns, and shall have the care and superintendence of the highways and bridges therein;" and it is made their duty "to require the overseers of highways, from time to time, and as often as they shall deem necessary, to perform any of the duties required of them by law." Section 101 provides that "whoever shall willfully obstruct any highway * * * shall forfeit, for every such offense, a sum not exceeding twenty-five dollars; and the overseer of the proper district shall cause such obstruction immediately to be removed." Section 102 provides that "in every case where a highway shall have been laid out and opened, and the same has been or shall be encroached upon by any fence, building or other fixture, the supervisors shall make an order, under their hands, requiring the occupant of the land through or by which such highway runs, and to which such fence, building or other fixture shall be appurtenant, to remove the same beyond the limits of such highway within thirty days; and they shall cause a copy of such order to be served upon such occupant; and every such order shall specify the width of the road, the extent of the encroachment," etc. Section 103 provides that "if the fence, building or other fixture causing such obstruction shall not be removed within thirty days after the service of a copy of such order, such occupant shall forfeit the sum of fifty cents for every day, after the expiration of that time, during which such encroachment shall continue." The subsequent sections provide a mode of procedure in case the fact of encroachment is denied. It appears from the evidence in this case that the supervisors first directed the overseer of the proper road district to remove the fence in question, but that he refused to act.

left uninclosed by plaintiff, " constituted mainly and almost entirely the previously traveled tracks;" that if there was a highway there by user, it did not include the land inclosed; and that when a road is claimed to be a highway, not by being laid out, but by user, it may be less than four rods wide, according to the actual tracks used by the public. *Harlow v. Humiston*, 6 Cow. 189. 2. That even if the *locus in quo* was highway, the fence was only an *encroachment*, and not an actual *obstruction*, and could not be summarily removed by defendants, with or without the direction of the town board; but that the board must proceed in the manner prescribed in R. S. ch. 19, secs. 102–112. *Soule v. State*, 19 Wis. 593; *Williams v. Fink*, 18 id. 265; *Hopkins v. Crombie*, 4 N. H. 520; *Harrower v. Ritson*, 37 Barb. 301; 6 Abb. N. Y. Dig. 417, sec. 5.

*Orton & Osborn*, for respondents, contended, upon the evidence, that the fence in question was a public nuisance which the defendants were at liberty to abate; but that, independently of this, it was the right of the town supervisors (under sec. 1, ch. 19, R. S.) to remove the fence; and that it was their duty to do so, because the town would have been liable for any injury received by persons traveling on the highway in consequence of the fence not being removed, the damage being one which would have resulted "by reason of the want of repair of the road" (sec. 120, ch. 19, R. S.); and that the remedy given by secs. 102–109 of said ch. 19, does not supersede the common law remedy by abatement, if the encroachment amounts to·a public nuisance. *Wetmore v. Tracy*, 14 Wend. 250.

COLE, J. It appears that the highway in question was surveyed by the town authorities in 1852. The witness Brown says, that as county surveyor he surveyed the road running north and south through the section at that time. He first found the quarter post

according to the government surveys in the north line of the section, and ran thence southward to the quarter post in the south line of the section. He then found the quarter post in the east line of the section and run thence west to the quarter post in the next line of the section. In this manner he ascertained the subdivision of the section according to the original surveys, and surveyed the road through the center of the section. And the evidence clearly shows that the road as thus surveyed has been used by the public since 1852.

Now, it is entirely clear that this survey, made according to the original government survey, must control as to the subdivision of the section. The surveyor found the quarter posts, the permanent monuments established by the government to fix the division line between the east and west half of the section. This line must govern, whether it is in fact equally distant from the east and west line of the section, or not. For this court has decided that where lines can be run from well ascertained and established monuments fixed by the government surveys, they will control in the division of lands. *Jones v. Kimble*, 19 Wis. 429; *Martin v. Carlin*, id. 454. The survey made in 1864 can have no legitimate bearing upon the questions involved in the case. The parties were concluded by the original government survey. The rights of purchasers according to these surveys cannot be affected by the subsequent survey made under the authority of an act of the legislature.

This being so, there is very little left of this case. The plaintiff's boundary line on the west is to be determined by the survey of 1852, and not by that of 1864. And, according to the former survey, he moved his fence nearly to the center of the highway as it had been used for more than ten years. Furthermore, parties through whom the plaintiff claims title built a fence in 1860 on the east side of the highway as

originally laid out, thus acquiescing in the use of the premises as a highway.

The court in effect instructed the jury, that if they found that the fence erected by the plaintiff in the highway extended more than six feet from the east line of the road into the same so as to endanger or inconvenience travel thereon, then it was the duty of the supervisors to cause the fence to be removed, doing no unnecessary damage; and that such action on their part was lawful. The plaintiff removed his fence into the middle of the highway, and by so doing committed a nuisance. It was the duty of the supervisors to cause the fence to be removed summarily. The public have the right to an uninterrupted passage along a highway for themselves and carriages; and it is the clear legal duty of the supervisors to cause all obstructions to be removed which seriously interfere with or impede the exercise of this right. It would be a most serious defect in the law if, in the case of a palpable obstruction of a highway, which interrupts its use and discommodes and endangers the safety of travelers, the public authorities had not the right to remove it without delay. We do not think that such is the state of the law in this state. *Lemon v. Hayden*, 13 Wis. 159; *Wyman v. State*, id. 663; *Wetmore v. Tracy*, 14 Wend. 250.

This disposes substantially of all the questions arising upon the record.

*By the Court.*—The judgment of the circuit court is affirmed.