STATE EX REL. YOUNG and others, Respondents, vs. MARESCH and others, Appellants.

*March 9—June 17, 1937.*

For the appellants there was a brief by *Eberlein & McCarthy* of Shawano, and oral argument by *M. G. Eberlein* and *J. R. McCarthy*.

For the respondents there was a brief by *Catlin & Catlin* of Appleton, and oral argument by *Mark Catlin, Sr.,* and *Mark Catlin, Jr.*

The following opinion was filed April 27, 1937:

NELSON, J. Before considering the merits of this controversy, we must first dispose of the defendants' motion to strike from the bill of exceptions certain pages thereof, which contain an affidavit, subscribed and sworn to by W. C. Doughty on September 29, 1936, and certain copies of highway proceedings taken from the town records and verified to be correct copies of the records by the testimony of one of the plaintiffs' attorneys given at the time the attorneys for the parties were attempting to settle the bill of exceptions. This was long after the trial had been concluded, the judgment entered, and an appeal taken to this court. The court, however, included the affidavit and the copies of the records as a part of the bill of exceptions. The court apparently was of the view that they should be included in the bill of exceptions so as to permit this court to make such use of them as it desired or saw fit.

A bill of exceptions should contain "the proceedings had and evidence given on the trial and the rulings and decisions of the court . . . not otherwise appearing of record," sec. 270.43, Stats., and should "include all testimony set forth by question and answer as shown by the transcript of the reporter's notes, unless the parties to the action stipulate otherwise." Sec. 270.44, Stats. The statutes are so clear as to give rise to no doubt as to what should be incorporated into a bill of exceptions. Making the affidavit and the copies of the town records a part of the bill of exceptions was wholly improper, and the defendants' motion to strike them from the bill of exceptions is granted.

State Highway No. 76, as now located, runs in a northwesterly direction from the southeast corner of the north-

west quarter of the northwest quarter of section 12, in township 23 north of range 15 east. It intersects the section line between sections 12 and 11 at a point located a few rods south of a point equidistant from the northwest corner and the southwest corner of said northwest quarter of the northwest quarter of section 12. Prior to about the year 1928, Highway No. 76 ran due west along the eighth line from the southeast corner of said forty to the southwest corner thereof, · then turned due north at that corner and ran along the section line between sections 11 and 12 to the present location of Highway No. 76. At the time Highway No. 76 was relocated there existed immediately to the south of the north-and-south leg of said old Highway No. 76, just described, a strip of land three rods wide which connected with old Highway No. 76 at the corner and ran south along the section line a distance of eighty rods. The status of that strip of land is the principal question before us. That strip will be referred to as the "Bodoh road." A short distance south of the south boundary line of Highway No. 76 as it now exists, a fence has been erected across the north-and-south leg of old Highway No. 76, for the obvious purpose of preventing or impeding travel by the public over old Highway No. 76 and the Bodoh road. The fence in question starts upon lands in section 11 and ends on lands in section 12. It is about fifty rods long and serves no purpose except that of obstructing or impeding travel.

Were it not for the fact that the north-and-south leg of old Highway No. 76 was connected with the Bodoh road, the relocation of Highway No. 76 would doubtless have operated as an abandonment of old Highway No. 76. No claim is made by the plaintiffs that so much of old Highway No. 76 as runs along the south side of the northwest quarter of the northwest quarter and the north side of the southwest quarter of the northwest quarter of section 12 has not been abandoned.

The defendants contend: (1) That the evidence does not sustain the findings of the court that that part of the *locus in quo* hereinbefore described as the north-and-south leg of old Highway No. 76 was ever a public highway; (2) that the evidence does not sustain the findings of the trial court that the Bodoh road was ever a legal highway; (3) that if there ever was a legal public highway from the south side of State Highway No. 76 as it now exists to the north end of the Bodoh road, the same has been abandoned and discontinued and the same has reverted to the original owners; (4) that if the Bodoh road ever was a public highway, it has been discontinued and the land has reverted to the original owners; (5) that in no event did the circuit court have the power to compel the defendants to put this road in passable condition and repair the same; (6) that E. A. Knoke and Arnold Buchholz, the respective owners of the lands adjoining, were and are necessary parties to this action; and, finally, (7) that the plaintiffs have entirely misconceived their remedy.

As to defendants' first contention, we consider it without merit. The old highway, which became Highway No. 76, existed for many years before becoming a state highway and existed many years thereafter before it was relocated in 1928. Upon the trial no one questioned the status of old Highway No. 76, as it existed prior to 1928.

As to defendants' second contention, we are of the opinion that the evidence supports the following findings of the court: That the Bodoh road, eighty rods long and three rods wide, was laid out in 1909; that the right of way therefor was purchased by the town with town funds from the then adjoining owners of the lands; that the adjoining owners thereafter built fences along the east and west boundary lines thereof; that the town shortly after it was laid out worked and graded it; and that it was traveled by such of the public as had occasion to use it every year from 1909 up to the time that it was

obstructed. No useful purpose would be served by reciting the evidence.

As to the defendants' third contention, we think it without merit. The north-and-south leg of old Highway No. 76 was without doubt a legal highway and, unless it has been abandoned or discontinued since 1928, it still exists. There is no claim that the town board has taken any steps to discontinue it, and even if it had, such action would be of doubtful validity. Sec. 80.02, Stats. 1935, provides in part:

"No town board shall . . . discontinue any highway when such discontinuance will deprive the owner of lands of access therefrom to the public highway."

Nor, in our view, can it be said that that particular piece of highway was or has been abandoned. True, it ceased to be a part of Highway No. 76 about the year 1928, but it does not follow that it has ceased to be a highway. Sec. 80.32 (2) provides:

"(2) Every highway shall cease to be a public highway at the expiration of four years from the time it was laid out, except such parts thereof as shall have been opened, traveled or worked within such time, and *any highway which shall have been entirely abandoned as a route of travel, and on which no highway funds have been expended for five years,* shall be considered discontinued."

While no highway funds have been expended on the north-and-south leg of old Highway No. 76 for the five years preceding the commencement of this action, it has never been "entirely abandoned as a route of travel." Abandonment of a highway by virtue of that statute can occur only when it has been "entirely abandoned as a route of travel," and when "no highway funds have been expended [upon it] for five years."

As to defendants' fourth contention, little need be said. What has just been said in considering defendants' third contention is controlling here.

So, as to defendants' first four contentions, we conclude that they are without merit, and that the court was right upon the present state of the record in concluding that the *locus in quo* is a public highway. In so concluding, the court in effect declared the status of the *locus in quo*. In *State ex rel. Thompson v. Eggen,* 206 Wis. 651, 238 N. W. 404, 240 N. W. 839, and *State ex rel. Van Coulter v. Fadden,* 209 Wis. 1, 242 N. W. 899, it was held that the status of a highway may be determined in a *mandamus* action and that upon such determination the repair of the highway by the town could be compelled by peremptory writ. That holding has given rise to some confusion. *Mandamus* does not lie in the absence of facts showing a clear right to the writ. When, because of conflicting evidence, *bona fide* issues of fact arise as to the status of a highway, then relief as to such status should be obtained in an action under the Declaratory Judgments Act, sec. 269.56, Stats. In so far as *State ex rel. Thompson v. Eggen* and *State ex rel. Van Coulter v. Fadden, supra,* may be considered as authority for the rule that the peremptory writ of *mandamus* may issue when there is a *bona fide* dispute as to the status of a highway which must be first determined, they are overruled. However, when a *mandamus* action is brought to compel the town board to perform some duty with respect to highways, and the action has been fully tried, the action may be considered as one brought under the Declaratory Judgments Act, and permit the status of a highway to be determined.

As to defendants' fifth contention, we think it likewise without merit. The defendants would have us construe the language of the peremptory writ as a command to repair the highway in question, so as to have it violate the rule of *State ex rel. Wisniewski v. Rossier,* 205 Wis. 634, 238 N. W. 825. The writ commands the defendants to "remove from the limits of said highway . . . all obstructions on said highway

and restore the same to public use within thirty days." In our opinion, that language is not subject to the construction put upon it by the defendants. In *State ex rel. Wisniewski v. Rossier, supra,* it was held that *mandamus* does not lie to compel a town board to construct or repair a highway in view of the remedy afforded by sec. 81.14, Stats. It appears that the trial judge visited the *locus in quo* during the trial and spent enough time there to make a careful inspection of it. The court thereafter found that the roadbed was level and in good traveling condition. Considering that finding in connection with the language of the peremptory writ, it is reasonably clear that the court did not intend to command the defendants to do more than to remove the obstructions which interfered with or impeded travel along said highway. The language of the writ is not, in our opinion, subject to the condemnation that it violates the rule laid down in *State ex rel. Wisniewski v. Rossier, supra.*

As to the defendants' sixth contention, it is our view that it is not urged at this time with very good grace, since the question was not raised by a motion to quash the alternative writ because of a defect of parties or called to the attention of the court upon the trial. Had the matter been called to the attention of the trial court, it no doubt would have acted promptly and on motion of the plaintiff, or its own motion, made the owners of the adjoining lands parties to the action. Both of them were present at the trial and testified at length regarding all of the matters in controversy of which they had knowledge. Although interested in the action, they were not parties to it and apparently not represented by counsel so as to render the judgment *res adjudicata* as to them. Their rights, therefore, have not been determined. In this situation and to obviate the necessity of another long and expensive trial, for the purpose of determining the status of this highway, we are of the opinion that, upon the return of

the record to the circuit court, it should make all those who have an interest in the adjoining lands parties to this action and afford them an opportunity to be heard and to offer such further proofs as are relevant to the question as to the status as a highway of the *locus in quo*. After this is done, the status of the highway may be redeclared in accordance with the evidence adduced.

As to defendants' seventh contention, we are of the opinion that it is sound. *Mandamus* is an extraordinary legal remedy and must be based upon a clear and specific legal right which is free from substantial doubt. *Burgin v. Deuel,* 189 Wis. 648, 207 N. W. 272. There was, in our opinion, prior to the trial of this action, a *bona fide* dispute as to the existence of this highway. *Mandamus* should not lie to compel the supervisors to remove an obstruction from a highway when that duty, assuming that it exists, is dependent upon disputed and doubtful facts and when the legal result of the facts is subject to reasonable controversy. *State ex rel. Schermerhorn v. McCann,* 107 Wis. 348, 352, 83 N. W. 647. That case likewise involved a dispute as to the existence of a highway, and a *mandamus* action was brought against the supervisors of a town to compel them to remove obstructions from it. It was said:

"If the right is reasonably in serious doubt, from either cause mentioned, the discretionary power rests with the officer to decide whether or not he will proceed to enforce it till the right shall have been established in some proper action; and that discretion, fairly exercised, cannot be controlled by *mandamus.*"

In our opinion, another reason exists why the peremptory writ should not have issued. The circuit court concluded "that the petitioners herein are entitled to a writ of *mandamus* commanding and enjoining the said defendants, members of said town board, to remove the obstructions in said high-

way as provided by secs. 86.01 and 86.04, Statutes of Wisconsin." The peremptory writ commanded and enjoined the defendants, as members of the town board, to "remove from the limits of said highway hereinbefore described all obstructions on said highway and restore the same to public use within thirty days without further delay." Sec. 86.01 obviously relates to obstructions while sec. 86.04 relates to encroachments. Sec. 86.01 (1), Stats. 1935, provides:

"Every highway superintendent, and in the absence of the same, the town board shall immediately upon notice of its existence fill or remove any depression, ditch, hump or embankment which impedes the use of any highway in his district."

The duty of the highway superintendent and of the town board in his absence is to fill or remove any depression, ditch, hump, or embankment which impedes the use of any highway in his district. That statute is quite different in its terms from its predecessor. Sec. 1326, Stats. 1898, in part provided:

"Whoever shall obstruct any highway . . . shall forfeit for every such offense a sum not exceeding twenty-five dollars; and the superintendent of highways shall cause such obstruction immediately to be removed."

In 1909, by ch. 143, sec. 1326 was amended to read:

"1. . . . Any person who shall obstruct any public highway in this state by wilfully or maliciously placing or causing to be placed therein any depression, ditch, humps or embankments of earth, logs, stone or stones, nails, glass or other materials or substances intended or calculated to impede or incommode the lawful use of such highway, . . . shall . . . be guilty of a misdemeanor. . . .

"2. The superintendent of highways of any township or district where such obstruction may exist upon written notice from any resident of this state shall cause such obstruction immediately to be removed, and in case of failure to cause the removal of such obstruction within a reasonable time

after service of such written notice shall forfeit not less than ten nor more than twenty-five dollars."

In 1923, by ch. 108, which was a comprehensive revision of the statutes relating to the establishment, construction, maintenance, and use of highways, sec. 1326, which had theretofore been renumbered 86.01, was amended to read as follows:

"*Removal of highway obstructions.* (1) Every highway superintendent shall immediately upon notice of its existence fill or remove any depression, ditch, hump or embankment which impedes the use of any highway in his district."

By that amendment, the words "of earth, logs, stone or stones, nails, glass or other materials or substances," etc., were eliminated. In 1933, by ch. 106, the legislature amended sec. 86.01, to read as it now exists (*supra*).

Sec. 343.484, enacted in 1931, by ch. 378, makes it a misdemeanor wilfully or maliciously to place any obstruction in any public highway intended or calculated to impede or incommode the use of such highway.

Whether the legislature considerately intended to limit the duty of the superintendent or, in his absence, that of the town board, to remove only a depression, ditch, hump, or embankment, is not clear. The language of the present statute, however, construed according to the common and approved usage, clearly so limits his or their duty. Many times prior to 1923 this court had held that a fence which impedes or seriously inconveniences public travel or renders it dangerous is an obstruction. *Neff v. Paddock,* 26 Wis. 546; *Hubbell v. Goodrich,* 37 Wis. 84; *Jones v. Tobin,* 135 Wis. 286, 115 N. W. 807; *Jennings v. Johonnott,* 149 Wis. 660, 135 N. W. 170, and numerous cases cited therein, but the words "fence or any other obstruction" are not in the present statute.

We cannot amend the statute by inserting words therein which were omitted by the revision of 1923. If there is a

defect in the statute, it is not the province of this court to correct it. That must be done by the legislature. A fence existing across a highway for the purpose of impeding travel thereon clearly is an obstruction, not an encroachment. Since no statutory duty is imposed by law upon either the superintendent of highways, or the town board in his absence, summarily to remove a fence obstruction, *mandamus* does not lie to compel the town board to remove it.

*By the Court.*—The judgment of the circuit court for Outagamie county is, upon the present record, affirmed as to the status of the highway, subject, however, to a further hearing after making the adjoining landowners parties to the action and subject to a further declaration by the court as to the status of such highway. The judgment of the circuit court, as to the issuance of the peremptory writ of *mandamus,* is reversed. The cause is remanded for further proceedings. No costs to be taxed in this court by either party. The respondents to pay the clerk's fees.

A motion for a rehearing was denied, with $25 costs, on June 17, 1937.