NORMAN M. CLAPP, Secretary Department of Transportation
Section 346.57 (4) (h), Stats., establishes speed limits as follows:
 "In the absence of any other fixed limits or the posting of limits as required or authorized by law, 55 miles per hour during hours of darkness and 65 miles per hour at other times."
Section 343.30 (1n), Stats., reads in part:
 "A court shall suspend the operating privilege of a person for a period of 15 days upon such person's conviction by the court of exceeding the speed limit as established by s. 346.57 (4) (h) or a higher speed limit established under s. 349.11 (2) (a), by 20 or more miles per hour . . . ."
Thus, any person who violates the speed limits set by sec. 346.57
(4) (h), Stats., by 20 or more miles per hour is subject to a mandatory 15-day suspension of driving privileges.
However, by ch. 157, Laws of 1973, the legislature created sec.346.57 (4) (hm), Stats., reading as follows:
 "Notwithstanding par. (h), during an energy emergency, in the absence of any other fixed limits or the posting of limits as required or authorized by law, 55 miles per hour."
This new law remains in effect until the Governor declares an end to the energy emergency or until July 1, 1975, whichever occurs first. Ch. 157, sec. 15, Laws of 1973. Subsection (h) is not repealed, but subsec. (hm) is applicable during the energy emergency.
Your question is whether a person who exceeds the speed limit set by subsec. (hm) by 20 or more miles per hour is subject to the mandatory 15-day suspension provided by sec. 343.30 (1n). It is my opinion that this question must be answered in the negative.
The effect of subsec. (h) is to permit legal speeds of 55 miles per hour at night and 65 miles per hour during the day. Since it has not been repealed, it could be enforced during the energy emergency. Traffic officers could continue to issue citations for violations thereof, and persons convicted of violating this statute by 20 or more *Page 22 
miles per hour would be subject to the 15-day suspension provided by sec. 343.30 (1n). However, new subsec. (hm) provides that notwithstanding subsec. (h), the legal maximum speed shall be 55 miles per hour in the absence of other fixed or posted limits. The effect of this statute is to permit maximum speeds of 55 miles per hour during the energy emergency. Thus, a speed of 60 miles per hour in the daytime, for example, is no longer permitted.
You suggest that subsec. (hm) suspends the 55/65 miles per hour limit of subsec. (h), and substitutes therefor a flat 55 miles per hour limit. I think it is more accurate to say that subsec. (hm) reduces the maximum permissible speed to 55 miles per hour. While the practical effect of this is to substitute a 55 miles per hour daytime limit for the prior 65 miles per hour daytime limit, new subsec. (hm) does not supersede subsec. (h) to such an extent that we would be justified in reading subsec. (hm) into the provisions of sec. 343.30 (1n) as a substitute for or in addition to the reference to subsec. (h) therein.
It is likely that the legislature would have made the 15-day suspension provisions of sec. 343.30 (1n) applicable to violations of subsec. (hm) if this problem had been called to their attention. However, it failed to make the statutory changes necessary to accomplish this. This appears to have been a mere oversight on its part. However, it is my opinion that it would not be proper to attempt to correct this oversight by resorting to statutory construction. The correction should instead be made by the legislature. A brief addition to either sec. 343.30 (1n), or preferably to new subsec. (hm) would accomplish this.
It should be kept in mind that we are here construing sec.343.30 (1n), a license revocation statute. The rules governing the construction of statutes generally have been applied to the construction of statutes providing for the revocation or suspension of licenses to operate motor vehicles. 60 C.J.S.,Motor Vehicles, sec. 164.1, p. 821; Rogers v. Wagstaff (Utah 1951), 232 P.2d 766, 26 A.L.R. 2d 1316. In construing a statute, we must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished. Scanlon v. Menasha (1962), 16 Wis.2d 437, 442,114 N.W.2d 791. Construction of any *Page 23 
statute consists in giving the words a meaning which renders it effectual to accomplish the purpose or fulfill the intent which it plainly discloses. State ex rel. Mueller v. School DistrictBoard (1932), 208 Wis. 257, 260, 242 N.W. 574. I cannot conclude that the statutes here involved plainly disclose an intention to substitute (hm) for (h) in sec. 343.30 (1n). In Application ofDuveneck (1961), 13 Wis.2d 88, 92, 108 N.W.2d 113, the court said:
 ". . . We cannot, under the guise of liberal construction, supply something that is not provided in the statute . . ."
Also, in State ex rel. Young v. Maresch (1937), 225 Wis. 225,237, 238, 273 N.W. 225, the court said:
 "We cannot amend the statute by inserting words therein which were omitted by the revision of 1923. If there is a defect in the statute, it is not the province of this court to correct it. That must be done by the legislature . . . ."
You point out that the creation of subsec. (hm), instead of the repeal and recreation of subsec. (h), was based upon a drafting consideration, rather than on an intent to exempt speeders from the mandatory suspension provisions of sec. 343.30 (1n). You also point out that the purpose of ch. 157, Laws of 1973, is to provide authority to state government to implement that national program to conserve scarce energy resources, and that mandatory suspension in cases of speeding 20 miles or more over the new 55 mile speed limit would assist in the implementation of the national program to conserve scarce energy resources. You also call attention to sec. 343.30 (1), Stats., which provides for discretionary suspension of operating privileges for any period.
It is my opinion that these considerations do not authorize us to read sec. 343.30 (1n) as if (hm) had been substituted for (h) therein. This would take legislative action. Until the legislature is able to take action to rectify this situation, it would be appropriate for the courts to consider ordering a 15-day discretionary suspension under sec. 343.30 (1), in situations where they would ordinarily be ordering a 15-day mandatory suspension under sec. 343.30 (1n).
RWW:AOH *Page 24